**UNITED STATES of America**

v.

**James Neal BLAKEMAN as Executor of the Estate of C.E. Blakeman, Deceased, et al.**

**Civ. A. No. CA4–86–511–A.**

United States District Court, N.D. Texas, Fort Worth Division.

Oct. 30, 1990.

Waymon G. DuBose, Jr., Dept. of Justice, Tax Div., Dallas, Tex., for U.S.

David R. Seidler, Shannon, Gracey, Ratliff & Miller, Fort Worth, Tex., for Ridglea Bank.

William L. Kirkman, Bourland & Kirkman, Fort Worth, Tex., for James Neal Blakeman, Maudine Blakeman, Robert Earl Blakeman and Karen A. Whaley.

William D. Elliott, Bryan C. Collins, Jackson & Walker, Dallas, Tex., for Maudine Blakeman.

Michael Deeds, Dallas, Tex., Steve Meeks, Heard, Goggan, Blair, Williams & Harrison, Fort Worth, Tex., for Tarrant County, Tex., Fort Worth Independent School Dist. and City of Fort Worth, Tex.

## MEMORANDUM OPINION

McBRYDE, District Judge.

This action was brought by the United States of America (hereinafter "plaintiff") to reduce to judgment the assessment of certain federal estate tax liabilities of the estate of C.E. Blakeman, deceased ("the estate"); to foreclose plaintiff's federal tax lien(s) against certain real property (hereinafter described) located in Fort Worth, Tarrant County, Texas; and to obtain judgment against defendant James Neal Blakeman, as executor of the estate and individually, for the estate taxes to the extent of all payments of debts of the estate, and, against the survivors of C.E. Blakeman based on the value of any assets they might have received from the estate.

Defendant Maudine Blakeman (hereinafter "Mrs. Blakeman") is the widow of C.E. Blakeman; defendants James Neal Blakeman, Robert Earl Blakeman, and Karren A. Whaley (hereinafter "defendant children") are the children of C.E. Blakeman by a previous marriage; defendant Keep Fresh Filters, Inc., d/b/a Diversified Financial Planners, Inc., formerly NCNB, formerly known as Ridglea Bank, (hereinafter "Keep Fresh") is a judgment creditor of the estate; and defendants Tarrant County, Texas, Fort Worth Independent School District and City of Fort Worth, Texas, (hereinafter "defendant taxing authorities") are taxing entities to whom ad valorem taxes, penalties and interest are due and owing by the estate.

The primary dispute in this case centers around 101.5954 acres of land that was owned by C.E. Blakeman as his separate property at the time of his death. A legal description of this land is given in Exhibit "A" to the judgment in this action that bears the same date as this memorandum opinion. This acreage will be referred to herein as the "Randol Mill property."

At the time of his death, C.E. Blakeman and defendant Mrs. Blakeman resided upon the Randol Mill property. Thereafter, Mrs. Blakeman continued to reside on a 100 acre part of the Randol Mill property. C.E. Blakeman left the property to the defendant children by his last will and testament. A dispute arose between Mrs. Blakeman and defendant children as to the rights of each in the Randol Mill property. Suit, to which they were all parties, was brought in Probate Court in Tarrant County, Texas, to determine their respective rights, and on May 7, 1980, a final judgment was entered. The judgment determined that Mrs. Blakeman had a rural homestead in the Randol Mill property and that she was entitled to the use of 100 acres, to be selected by her, of the Randol Mill property for so long as she occupies the same as her homestead. Neither plaintiff nor defendant Keep Fresh or any of the taxing authorities was a party to the Probate Court action.

### The Contentions of the Parties Relative to the Randol Mill Property

The contentions of the parties relative to the Randol Mill property are, briefly, as follows:

Plaintiff contends that the Randol Mill property is encumbered with a special federal estate tax lien pursuant to 26 U.S.C. § 6324(a)(1), as well as a general federal tax lien pursuant to 26 U.S.C. § 6321, to secure payment of the federal estate tax liability of the estate and that plaintiff is entitled to foreclosure of its liens.

Mrs. Blakeman contends that plaintiff's special federal estate tax lien has expired because more than ten years have passed since the date of C.E. Blakeman's death, and, further, that plaintiff's complaint fails to state a claim based on 26 U.S.C. § 6321. She claims in the alternative that, if the Court finds that plaintiff's complaint is suf-

ficient to state a claim under § 6321, she continues to have a rural homestead in 100 acres of the Randol Mill property and that, if the Court orders foreclosure of the property, she is entitled to recover the economic equivalent of a life estate in the 100 acres that she selected as her homestead pursuant to the authority of the May 7, 1980, Probate Court judgment. Specifically, Mrs. Blakeman claims that she is entitled to 74.432 percent of the proceeds of any foreclosure sale of the 100 acres.

Defendant children do not contest that the Randol Mill property is encumbered with a general federal tax lien or that plaintiff is entitled to foreclose the tax lien. They contend that Mrs. Blakeman now has only an urban homestead interest, rather than a rural homestead interest, in the Randol Mill property. Put another way, defendant children claim that Mrs. Blakeman is entitled only to the use of one acre of the Randol Mill property and that, upon foreclosure of the property, they will be entitled to receive the bulk of the proceeds after payment of the outstanding debts of the estate. However, the defendant children join with Mrs. Blakeman in contending that plaintiff's lien rights are subject and inferior to whatever homestead rights Mrs. Blakeman had in the Randol Mill property when the estate tax assessments were made.

Keep Fresh and defendant taxing authorities do not dispute the validity of plaintiff's general federal tax lien or its right to a judgment of foreclosure. These defendants merely seek a determination of the priority of their liens, if any, against the Randol Mill property and recovery from the sales proceeds of the sums due and owing to them in the event a foreclosure sale is ordered.

### Stipulations

Prior to trial, the parties stipulated to the following facts:

1. C.E. Blakeman died on May 25, 1978, in Fort Worth, Tarrant County, Texas, while married to Mrs. Blakeman, and that he was survived by three children from a prior marriage, who are defendant children.

2. C.E. Blakeman left a will dated January 18, 1973, which appointed James Neal Blakeman as independent executor, and which was admitted to probate by order dated June 12, 1978.

3. James Neal Blakeman was appointed independent executor of the estate by Probate Court order dated June 12, 1978; on or about June 12, 1978, he executed and filed with the Probate Court an oath that he would well and truly perform the duties of the executor of the estate; he was issued letters testamentary as independent executor of the estate by the Probate Court; and, he, as independent executor of the estate, filed an inventory, appraisement and list of claims with the Probate Court on or about November 10, 1978, which was approved by the Probate Court, by order dated November 27, 1978.

4. On the date of his death, C. E. Blakeman owned the Randol Mill property, consisting of over 100 acres of land located in Fort Worth, Texas.

5. The Randol Mill property was the separate property of C.E. Blakeman and was included in the estate.

6. The will of C.E. Blakeman left all real property of his estate, including the Randol Mill property, to defendant children, who are the sole beneficiaries of the estate and will of C.E. Blakeman, in equal shares, share and share alike.

7. On May 7, 1980, the Probate Court entered a final judgment declaring that the Randol Mill property was the rural homestead of C.E. Blakeman and Mrs. Blakeman. The Probate Court's judgment ordered that Mrs. Blakeman have the use and benefit of 100 acres of the Randol Mill property for so long as she shall occupy the same as her homestead. Plaintiff was not made a party to the Probate Court action between Mrs. Blakeman and defendant children that resulted in the Probate Court's judgment.

8. A delegate of the Secretary of the Treasury made assessments against the estate of C.E. Blakeman on June 17,

1980, in the amount of $124,820.93 for federal estate taxes and $12,651.37 interest. On July 21, 1980, the Secretary of the Treasury assessed penalties and interest in the amounts of $31,205.23 and $1,395.26, respectively. On August 18, 1980, the Secretary of the Treasury assessed interest in the amount of $1,436.30. A payment received April 25, 1983, reduced the outstanding balance of the assessments to $121,522.34. An abatement of a delinquency penalty reduced the outstanding balance of the assessments to $90,495.65 as of July 21, 1980.

9. The assessments were made on the basis of a return prepared by the Internal Revenue Service and agreed to by defendant James Neal Blakeman as executor of the estate.

10. On March 16, 1981, a notice of federal tax lien for the assessment against the estate of C.E. Blakeman was filed with the Tarrant County Clerk.

11. The Internal Revenue Service made demand upon defendant James Neal Blakeman, as executor of the estate, for payment of federal estate taxes due and owing from the estate prior to the filing of the complaint.

12. The complaint was filed on June 16, 1986.

13. James Neal Blakeman, as executor of the estate, has failed to pay the federal estate tax liability due and owing from the estate. There were insufficient funds to do so.

14. Mrs. Blakeman has continuously resided on the Randol Mill property since the death of C.E. Blakeman.

15. Mrs. Blakeman, who was born on June 20, 1928, was forty-nine years old at the date of death of C.E. Blakeman and is currently sixty-two years old.

16. As of October 9, 1990, the unpaid balance of the federal estate tax, interest and statutory additions due and owing to plaintiff United States of America from the estate of C.E. Blakeman, deceased, is $350,627.24.

17. As of October 1, 1990, the unpaid balance of ad valorem taxes, penalty, and interest due and owing to defendant taxing authorities from the estate is $27,731.13. This sum includes interest and penalty through October 31, 1990.

18. As of October 8, 1990, the aggregate unpaid balance of principal, interest, and attorney's fees due and owing by the estate to Keep Fresh pursuant to a judgment signed March 28, 1980 (in favor of Ridglea Bank, as plaintiff and against James Neal Blakeman, executor, as defendant) in Cause No. 48–55927–79 in the 48th District Court of Tarrant County, Texas is $96,865.89. Defendant Keep Fresh is the current owner and holder of the March 28, 1980, judgment.

19. All parties except plaintiff have agreed and stipulated that Keep Fresh, through its predecessors, duly perfected a judgment lien against the Randol Mill property by filing an abstract of judgment on May 30, 1980.

The Court adopts each of the stipulated facts, as set forth above, as a finding of fact by the Court.

The case was tried to the Court, without a jury, on October 11, 1990. Plaintiff and all defendants appeared by and through their respective attorneys of record. Mrs. Blakeman and the defendant children also appeared in person. The Court, having considered the record in this case and the evidence presented, has reached the additional findings and conclusions that are contained in the parts of this Memorandum Opinion that follow.

*The Special Federal Estate Tax Lien has Expired but Plaintiff's General Tax Lien has Been Sufficiently Pleaded*

■ C.E. Blakeman died May 25, 1978, and more than ten years have passed since the date of his death. As a matter of law, the special federal estate tax lien described in 26 U.S.C. § 6324(a)(1) has expired. *United States v. Potemken*, 841 F.2d 97 (4th Cir.1988). Contrary to plaintiff's argument, the phrase "or becomes unenforceable by reason of lapse of time," as used in § 6324(a)(1), operates only to shorten the duration of the special lien, not to lengthen it.

Although it is not drawn as articulately as might be desired, plaintiff's complaint constitutes a claim to foreclose on the general federal tax lien described in 26 U.S.C. § 6321 and is sufficient to give defendants notice of such a claim. *Conley v. Gibson,* 355 U.S. 41, 47, 48, 78 S.Ct. 99, 102, 103, 2 L.Ed.2d 80 (1957).

■ Requirements of the general tax lien include: (a) assessment within three years after a return is filed and (b) collection begun within six years of assessment. 26 U.S.C. § 6501(a); 26 U.S.C. § 6502(a). The parties have stipulated that the following assessments were made:

| June 17, 1980 | $124,820.93 | estate taxes |
|---|---|---|
| | $ 12,651.37 | interest |
| July 21, 1980 | $ 31,205.23 | penalties |
| | $ 1,395.26 | interest |
| August 18, 1980 | $ 1,436.30 | interest |

As a result of a payment and the abatement of a delinquent penalty, which was stipulated, the balance of the assessments due was $90,495.65 as of July 21, 1980. There is apparently no dispute that the assessments were timely and the Court so finds. The parties have further stipulated, and the Court finds, that on March 16, 1981, plaintiff filed a notice of federal tax lien with the Clerk of Tarrant County, Texas; that plaintiff made demand on defendant James Neal Blakeman, as executor of the estate of C.E. Blakeman, deceased; that the taxes were not paid; and that plaintiff filed its complaint June 16, 1986. Accordingly, the Court finds that plaintiff's suit to enforce its general tax lien was timely filed.

### Nature and Extent of the Homestead Claimed by Mrs. Blakeman

■ Texas law is clear that each spouse in a marriage has a separate and undivided possessory interest in the homestead, which is only lost by death or abandonment. Tex. Const. Art. XVI, § 52; *United States v. Rodgers,* 461 U.S. 677, 685, 103 S.Ct. 2132, 2138, 76 L.Ed.2d 236 (1983). The homestead right is not a mere statutory entitlement, but a vested property right. *Williams v. Williams,* 569 S.W.2d 867 (Tex.1978). Upon the death of

one spouse, the survivor has the same homestead rights (except as to size of a rural homestead) as both spouses had prior to the death of one and is entitled to use and occupy the homestead, even though it was the separate estate of the deceased. *Hunter v. Clark,* 687 S.W.2d 811, 815 (Tex. App.—San Antonio 1985, no writ). The right of the survivor vests immediately upon the death of the spouse and continues unless abandoned. *Id.*

A Texas homestead can be either rural or urban. Tex.Prop.Code Ann. § 41.002 (Vernon Supp.1990). If urban, it cannot amount to more than one acre of land, with improvements thereon; and, if rural, it cannot total more than 200 acres of land, with improvements thereon, for a family, or 100 acres, with improvements thereon, for a single adult person who is not otherwise entitled to a homestead. *Id.*

■ The evidence in this action establishes, and the Court finds, that:

1. Until the death of C.E. Blakeman, the Randol Mill property was the rural homestead of C.E. Blakeman and Mrs. Blakeman.

2. At all times since the death of C.E. Blakeman, Mrs. Blakeman has continued to use, occupy and claim at least a 100-acre part of the Randol Mill property as her homestead.

3. The 100-acre part of the Randol Mill property Mrs. Blakeman selected as her homestead pursuant to the May 7, 1980, Probate Court judgment is legally described in Exhibit "B" to the judgment in this action that bears the same date as this memorandum opinion. This 100 acres is hereinafter called the "100 acres."

4. Mrs. Blakeman has never abandoned the 100 acres as her rural homestead.

5. The 100 acres has been the homestead of Mrs. Blakeman at all times since the death of C.E. Blakeman.

Courts that have considered the abandonment of homestead rights have likened abandonment to waiver, i.e., the intentional release, relinquishment or surrender of a

right. *Hunter*, 687 S.W.2d at 815. So long as the surviving spouse has no actual intent to abandon his or her homestead rights, even conveyances that are otherwise void do not extinguish those rights. *In re Moody*, 862 F.2d 1194, 1201 (5th Cir.1989). Abandonment is an affirmative defense that must be proven by clear, conclusive and undeniable evidence. *Taylor v. Mosty Bros. Nursery, Inc.*, 777 SW.2d 568, 569 (Tex.App.—San Antonio 1989, no writ); *Farrington v. First National Bank*, 753 S.W.2d 248, 251 (Tex.App.—Houston [1st Dist.] 1988, writ denied); *McFarland v. Rousseau*, 667 S.W.2d 929, 931 (Tex.App.—Corpus Christi 1984, no writ). Once the initial homestead character of property is established, the homestead status is presumed to continue. *In re Niland*, 825 F.2d 801, 808 (5th Cir.1987).

The evidence in this case does not establish that Mrs. Blakeman has lost her rural homestead interest in the 100 acres for any reason.

### *Share of Sales Proceeds Allocable to Mrs. Blakeman's Homestead Estate*

 The parties have agreed, and the Court finds, that the value of Mrs. Blakeman's homestead estate is the economic equivalent of a life estate and that use of the Treasury tables set forth in Treas.Reg. § 20.2031–10(f) in determining the value of said estate is appropriate. The effect of Mrs. Blakeman's homestead interest in the 100 acres is that she has, and has had at all times since her husband's death, a life estate in those acres, with the remainder interest being vested in the estate. *Rodgers*, 461 U.S. at 686, 103 S.Ct. at 2138. The value of Mrs. Blakeman's homestead estate (life estate), measured as of date of tax assessment, was 74.423 percent of the total value of the 100 acres.

Plaintiff's lien attached only to the estate's remainder interest in the 100 acres. Therefore, plaintiff's share, subject to any prior lien claims of creditors of the estate, of the proceeds to be realized from foreclosure of its lien on the 100 acres shall be only 25.577%. This is so because the general federal tax lien described in 26 U.S.C. § 6321 and on which federal levy may be had under 26 U.S.C. § 7403(a) attaches only to the interest of the delinquent taxpayer in particular property and not to the entire property. *Rodgers*, 461 U.S. at 690, 103 S.Ct. at 2141. The lien attaches as of the date of assessment, June 17, 1980. 26 U.S.C. § 6322. In this case, the delinquent taxpayer is the estate of C.E. Blakeman, deceased. As of the date of assessment of the taxes, the estate had only a remainder interest in the 100 acres. The remainder interest was worth 25.577% of the value of the homestead, because Mrs. Blakeman was fifty-one years old at the date of assessment.

However, the sharing between Mrs. Blakeman and the estate in the 100 acres should be determined by the value of Mrs. Blakeman's homestead estate as of the present date. This is so because inequity would result if Mrs. Blakeman were to be permitted to have the use of the homestead for the ten years that have passed since date of assessment, as she has had, and at the same time to receive sales proceeds representing the value of the homestead life estate for that same ten-year period. In other words, she should not be permitted to realize twice the benefits of the homestead for the ten years ·since date of assessment.

Pursuant to the Treasury tables, the value as of the present time of Mrs. Blakeman's homestead estate (life estate) in the 100 acres is 60.352 percent of the value of the land. Thus, her share of proceeds from foreclosure sale of the 100 acres would be 60.352 percent. The difference between the 74.423 percent that represents the value of the homestead estate at date of assessment and the 60.352 percent shall be received by the estate, to be disposed of in administration of the estate under state law.

### *The Claims of Keep Fresh*

 The Court has determined that Keep Fresh is not entitled to direct payment of the proceeds of the two foreclosure sales described herein. Pursuant to Tex.Prop.Code § 52.006 (Vernon 1984),

the duration of a judgment lien is ten years following the date of recording and indexing the abstract of judgment. In this case, an abstract of judgment was filed by Keep Fresh's predecessor May 30, 1980; therefore, the judgment lien would have expired in May 1990 unless extended. Although the record supports a finding that defendant Keep Fresh's lien was duly perfected by filing an abstract and by obtaining the issuance of a writ of execution within ten years of the date of judgment, there is no evidence that Keep Fresh's judgment lien is still viable.

Plaintiff and all other defendants stipulated that Keep Fresh is the owner and holder of a judgment against the estate and that the amount due and owing as of October 8, 1990, is $96,865.89. The record establishes that an abstract of judgment was filed of record in Tarrant County, Texas, within one year of the date of judgment and that a writ of execution was issued within ten years of the date of judgment. Thus, Keep Fresh's judgment lien was duly perfected and the judgment itself has been kept alive. Tex.Civ.Prac. & Rem.Code § 34.001 (Vernon 1986); *Hicks v. First National Bank,* 778 S.W.2d 98, 100 (Tex.App. —Amarillo 1989, writ denied); *Cox v. Nelson,* 223 S.W.2d 84 (Tex.Civ.App.—Texarkana 1949, writ ref'd). However, though the judgment is still alive, there is no evidence that the judgment lien against the Randol Mill property was kept alive by refiling of the abstract. Tex.Prop.Code § 52.001; *Burton Lingo Co. v. Warren,* 45 S.W.2d 750, 753 (Tex.Civ.App.—Eastland 1931, writ ref'd). Nevertheless, Keep Fresh should be able to assert against the estate any rights it has as a judgment creditor of the estate.

### The Claims of the Taxing Authorities

■■■] Though the parties stipulated that as of October 1, 1990, the unpaid balance of the ad valorem taxes, penalty and interest due and owing to defendant taxing authorities from the estate is $27,731.13, there is no stipulation or proof that these ad valorem taxes, etc., were assessed or owed as to, or against, the Randol Mill property. For all that is shown from the record, the ad valorem taxes owed to defendant taxing authorities could have accrued because of taxes assessed against property entirely different from the Randol Mill property, which could have been owned by C.E. Blakeman prior to his death. As a consequence, the Court is not allowing defendant taxing authorities to participate directly in the proceeds of the foreclosure sales described in this memorandum opinion. However, the taxing authorities should be able to assert, under state law, against the estate any rights they have as judgment creditors of the estate.

### Foreclosure and Application of Proceeds of Sale

■■ Defendant children argue, in their post-trial brief, that this Court does not have to order the foreclosure of the Randol Mill property, or, alternatively, that the property should be put on the market for a reasonable length of time. In support of this proposition, defendant children cite to *United States v. Boyd,* 246 F.2d 477 (5th Cir.), cert. denied, 355 U.S. 889, 78 S.Ct. 261, 2 L.Ed.2d 188 (1957); *United States v. National Bank of Commerce,* 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985); and *United States v. Rodgers,* 461 U.S. 677, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983). The exceptions to forced sale described in the *Boyd* case are inapposite. Likewise, the *National Bank of Commerce* case is not governing because it is a levy case and not a foreclosure case. Finally, although the *Rodgers* case indicates that a court may sometimes refuse to order foreclosure, the Supreme Court emphasizes "that the limited discretion accorded by § 7403 should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." 461 U.S. at 711, 103 S.Ct. at 2152.

In this case, the parties have not presented evidence to support the exercise of the Court's discretion not to order foreclosure. Accordingly, the Court will order foreclosure of the Randol Mill property. The Court will first order foreclosure sale of the 1.5954 acres in which Mrs. Blakeman

does not have a homestead interest. The sale is to be conducted within sixty (60) days after the date of signing of this memorandum opinion. The proceeds from the sale of the 1.5954 acres shall first be applied to the reasonable and necessary costs of sale, and then any balance remaining shall be distributed as follows, in the sequence set forth below:

1. First, the balance, if any, shall be used to satisfy the debt of the estate to plaintiff.

2. If any remains, the balance shall be paid to the estate, through its personal representatives.

If the proceeds from the sale of said 1.5954 acres are insufficient to pay the sums due and owing to plaintiff, then the remaining 100 acres of the Randol Mill property shall be sold by foreclosure, which sale, if it is necessary, shall be conducted within one hundred twenty (120) days after the date of signing of this memorandum opinion. The proceeds from the sale of the 100 acres shall be distributed as follows, in the sequence set forth below:

1. Mrs. Blakeman shall receive 60.352% of the sales proceeds.

2. Next, the sales proceeds shall be applied to the reasonable and necessary costs of sale.

3. Next, the debt of the estate to plaintiff shall be paid in full, except that the amount to be received by plaintiff from the proceeds of the second sale shall not in any event exceed 25.577% of the gross proceeds of sale.

4. If any remains, the balance shall be paid to the estate, through its personal representative.

### Liability of James Neal Blakeman

■ The Court previously determined that defendant James Neal Blakeman is personally liable to plaintiff to the extent that he has used funds of the estate to pay debts of the estate. The evidence at trial showed that this defendant paid by use of funds of the estate $13,525.00 to the State of Texas for inheritance taxes. The Court finds that defendant James Neal Blakeman, individually, is liable to plaintiff in the amount of $13,525.00, pursuant to 31 U.S.C. § 3713. Defendant James Neal Blakeman, as executor of the estate, is liable to plaintiff in the amount of $350,-627.24, as stipulated by the parties as the amount due and owing at time of trial.

### Liability of Remaining Individual Defendants·

At trial, plaintiff announced that it is no longer seeking judgment against defendants Maudine Blakeman, Robert Earl Blakeman or Karren A. Whaley, individually. Accordingly, the Court finds that plaintiff should take nothing from these defendants.

### Distribution to be Made of Sales Proceeds to be Received by the Estate

Because of the joinder of James Neal Blakeman, as executor of the estate of C.E. Blakeman, deceased, as a party to this action, the estate, for practical purposes is a party to the action, through its personal representative. The Court has concluded that the foreclosure sales to be ordered by the Court could, if accomplished, result in the creation of funds that would be an asset of the estate, against which creditors of the estate, as well as the defendant children as beneficiaries of the estate, might assert claims and interests. These potential claimants include Keep Fresh, defendant taxing authorities and defendant children. The Court is unable to determine from the record in this case whether there are other potential claimants against the estate.

Rather than to involve itself in allocation of the sales proceeds that might be received by the estate pursuant to foreclosure, the Court is providing in the judgment that the excess funds, if any, shall be paid to the estate. Thereafter, all claimants against, and beneficiaries in, the estate can resolve through appropriate state law procedures entitlement to any sales proceeds received by the estate.

### Judgment to be Entered

The Court's judgment in accordance with this memorandum opinion shall be set forth

in a separate document, signed the same date as the date of signing of this memorandum opinion.