997 F.2d 1084
 70 A.F.T.R.2d 92-5366, 72 A.F.T.R.2d 93-5755,
72 A.F.T.R.2d 93-6742, 72 A.F.T.R.2d 93-6750,
92-2 USTC P 50,455, 93-2 USTC P 50,485
 UNITED STATES of America, Plaintiff-Appellant-Cross-Appellee,
v.
James Neal BLAKEMAN, As Executor of the Estate of C.E.
Blakeman, Deceased, Robert Earl Blakeman and Karen
A. Whaley,
Defendants-Appellees-Cross-
Appellants and Cross-Appellees,
RIDGLEA BANK, et al., Defendants-Appellees,
v.
Maudine BLAKEMAN, Defendant-Appellee-Cross-Appellant.
 No. 91-1027.
 United States Court of Appeals,
Fifth Circuit.
 July 21, 1992.
Order Granting Rehearing July 28, 1993.
 
 Marvin Collins, U.S. Atty., Waymon G. DuBose, Jr., Asst. U.S. Atty., Tax Div., Dallas, TX.
 Joy L. Pritts, Gary R. Allen, Chief, David A. Hubbert, Kenneth L. Greene, Appellate Section, Tax Div., Dept. of Justice, Washington, D.C., for U.S.
 William L. Kirkman, Bourland & Kirkman, Ft. Worth, TX, for J. Blakeman, C.E. Blakeman, R.E. Blakeman and Whaley.
 William D. Elliott, William H. Hornberger, Brian Collins, Jackson & Walker, Dallas, TX, for Maudine Blakeman.
 Stephen Meeks, Michael Deeds, Heard, Goggan, Blair, Williams & Harrison, Ft. Worth, TX, for Tarrant County, Ft. Worth School Dist. and City of Ft. Worth.
 David R. Seidler, Shannon, Gracey, Ratliff & Miller, Ft. Worth, TX, for Ridglea Bank.
 Appeals from the United States District Court for the Northern District of Texas.
 Before JOLLY, JONES, and EMILIO M. GARZA, Circuit Judges:
 EMILIO M. GARZA, Circuit Judge:
 
 
 1
 The United States brought this suit seeking judgment against the estate of C.E. Blakeman for federal estate taxes and to foreclose a federal tax lien against property of the estate.[1] The district court entered judgment in favor of the United States, enforced the government's general federal tax lien, and ordered foreclosure of certain estate property. 750 F.Supp. 216 (N.D.Tex.1990). The parties have filed cross-appeals.
 
 
 2
 * A
 
 
 3
 C.E. Blakeman ("C.E.") died on May 25, 1978. He was survived by his wife, Maudine Blakeman ("Mrs. Blakeman"), and three children from a previous marriage--James Neal Blakeman, Robert Earl Blakeman, and Karen Whaley ("the Blakeman children"). At the time of his death, apart from the community property he shared with his wife, C.E. owned as his separate property a tract of land known as the Randol Mill Property--the major asset of his estate--which consisted of 101.5954 acres of land located in Fort Worth, Tarrant County, Texas.
 
 
 4
 C.E.'s 1973 will left all real property of his estate, including the Randol Mill Property, to his children. After C.E.'s death, a dispute arose between the Blakeman children and Mrs. Blakeman as to their respective rights in C.E.'s estate. Following a trial, the Tarrant County Probate Court entered judgment declaring that the Randol Mill Property is the rural homestead of C.E. and Mrs. Blakeman. That judgment ordered that Mrs. Blakeman have the use and benefit of 100 acres of the Randol Mill Property for as long as she occupied the property as her homestead.[2]
 
 
 5
 On June 17, 1980, the Secretary of the Treasury made assessments against the estate in the amount of $124,820.93 in federal estate tax and $12,651.37 in interest. On July 21, 1980, the Secretary made an additional assessment of interest and penalties relating to the unpaid estate tax in the amounts of $1,395.26 and $31,205.23, respectively. Another assessment for interest in the amount of $1,436.30 was made on August 18, 1980. On March 16, 1981, the I.R.S. filed a notice of federal tax lien for the assessments against the estate with the Tarrant County Clerk. The I.R.S. made demand upon James Neal Blakeman, as executor of C.E.'s estate, for payment of the outstanding federal estate taxes.
 
 B
 
 6
 The government filed suit on June 16, 1986, seeking judgment against the estate for federal estate taxes and judicial foreclosure on its federal tax lien against the Randol Mill Property. Following trial, the district court found that Mrs. Blakeman had a rural homestead interest in the Randol Mill Property from the date of C.E.'s death until trial. The district court held that the special tax lien under 26 U.S.C. § 6324 had expired, but the general tax lien under 26 U.S.C. § 6321 was valid and attached to the property at issue--subject to Mrs. Blakeman's homestead interest. The district court ordered foreclosure of the federal tax lien, and, from the proceeds of such foreclosure, awarded Mrs. Blakeman her interest in the property as of the foreclosure date, but limited the government's recovery to the estate's interest in the property on the date the federal tax lien arose in 1980.[3] The district court also ordered that the difference between the value of Mrs. Blakeman's interest on the date the federal tax lien arose and the value of her interest on the date judgment was entered be paid to the estate--irrespective of whether the government was otherwise able to collect the tax liability of the estate.
 
 
 7
 The parties cross-appeal, raising various contentions of district court error and challenging specific district court rulings.[4] The issues presented are:
 
 
 8
 (a) Whether the district court properly concluded the government's complaint stated a claim based on the general federal tax lien arising under 26 U.S.C. § 6321;
 
 
 9
 (b) Whether the district court properly concluded that the Randol Mill Property was the rural homestead of Mrs. Blakeman;
 
 
 10
 (c) Whether the district court properly valued the Randol Mill Property; and
 
 
 11
 (d) Whether Mrs. Blakeman is entitled to compensation for the taxes she will pay as a result of the foreclosure sale.
 
 II
 
 12
 * The district court found that the government's complaint stated a claim arising under 26 U.S.C. § 6321--the general federal tax lien statute.[5] A tax lien arising under section 6321 is one of two types of tax liens the United States has available to it to enforce the estate tax liability of a decedent's estate. See United States v. Cleavenger, 517 F.2d 230, 232 (7th Cir.1975). The other type of lien to secure payment of federal estate taxes is known as the special estate tax lien. Id. The special estate tax lien arises under 26 U.S.C. § 6324(a)(1), which provides that, "[u]nless the estate tax imposed by chapter 11 is sooner paid in full, or becomes unenforceable by reason of lapse of time, it shall be a lien upon the gross estate of the decedent for 10 years from the date of death...." The special estate tax lien automatically attaches to all property in the decedent's estate upon the decedent's death; the government need not make an assessment or a demand. See Kleine v. United States, 539 F.2d 427, 429 (5th Cir.1976); accord United States v. Vohland, 675 F.2d 1071, 1074 (9th Cir.1982); see also Detroit Bank v. United States, 317 U.S. 329, 332, 63 S.Ct. 297, 298, 87 L.Ed. 304 (1943).
 
 
 13
 The general tax lien arises under 26 U.S.C. § 6321 when the taxpayer fails to pay a federal tax liability, after assessment and notice are given and demand upon the taxpayer is made. See Harris v. United States, 764 F.2d 1126, 1128 (5th Cir.1985). The lien continues until the taxpayer satisfies the debt or the statute of limitations runs. See 26 U.S.C. § 6322; United States v. Wilkes, 946 F.2d 1143 (5th Cir.1991); Texas Commerce Bank--Fort Worth v. United States, 896 F.2d 152, 161 (5th Cir.1990) (citations omitted). The government must collect the assessed tax liability "by levy or by a proceeding in court ... within 6 years after the assessment of the tax ..." 26 U.S.C. § 6502(a); McCray v. United States, 910 F.2d 1289, 1290 (5th Cir.1990), cert. denied sub nom., --- U.S. ----, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991); United States v. Verlinsky, 459 F.2d 1085, 1086-87 (5th Cir.1972). Section 6503(b) tolls the limitations period, however, "for the period the assets of the taxpayer are in the control or custody of the court in any proceeding before any court of the United States or of any State or the District of Columbia, and for 6 months thereafter." 26 U.S.C. § 6503(b).
 
 
 14
 The Blakeman children argue that the district court erred in concluding that the government's complaint stated a claim under 26 U.S.C. § 6321 because the complaint does not contain a specific reference to the general federal tax lien under 26 U.S.C. § 6321. The government argues, on the other hand, that the complaint states a claim based on the general tax lien under the strictures of Rule 8 and notice pleading. See Fed.R.Civ.P. 8. Moreover, the government argues that, even if the Blakeman children did not ascertain from the complaint that the government's claim was based on section 6321's general tax lien, the Blakeman children had sufficient notice of the government's theory before trial.[6] The government argues also that, because the special estate tax does not depend upon the filing of the notice of a lien, there would have been no reason to make such an allegation in the complaint unless the government also sought relief under section 6321.
 
 
 15
 The Blakeman children's challenge consists simply of the argument that the complaint does not contain a specific reference to the general federal tax lien or section 6321 and the government relied solely on the special estate tax lien. We find that the Blakeman children's argument misapprehends the allegations in the complaint, the language of the Federal Rules of Civil Procedure and the substance of "notice pleading." See Fed.R.Civ.P. 8.
 
 
 16
 The Federal Rules of Civil Procedure create a presumption against rejecting pleadings for failure to state a claim. See Auster Oil & Gas, Inc. v. Stream, 764 F.2d 381, 386 (5th Cir.1985), cert. denied sub nom., 488 U.S. 848, 109 S.Ct. 129, 102 L.Ed.2d 102 (1988). A plaintiff must comply with Rule 8 in pleading a claim for relief in federal court; this court has determined that Rule 8 may be satisfied by a "plain recitation of the facts that a party believes entitles her to relief." Id. While the complaint does not expressly state that the government sought foreclosure of its tax lien under section 6321, the allegations in the complaint support a claim based on a general federal tax lien under 26 U.S.C. § 6321. Specifically, the complaint: (i) sets forth the date of C.E.'s death and the date the government assessed the estate tax against the estate; (ii) contains allegations that the government gave notice of the assessment, demanded payment, and filed notice of the lien with the Tarrant County Clerk; and (iii) states that the government was "seek[ing] foreclosure of its federal tax lien." Although neither the general or specific federal tax lien statute was referenced in the government's complaint, these allegations were sufficient to put defendants on notice that the government was seeking foreclosure under the general federal tax lien statute. Therefore, finding that the government's complaint contains a claim to foreclose on the general federal tax lien described in 26 U.S.C. § 6321 and is sufficient to give defendants notice of such a claim, we hold that the government's general federal tax lien is valid and enforceable.
 
 B
 
 17
 The district court concluded that Mrs. Blakeman had a rural homestead interest in the Randol Mill Property.[7] We review the district court's factual findings under the clearly erroneous standard, and review de novo the district court's application of law to those facts. See In re Bradley, 960 F.2d 502, 507 (5th Cir.1992); see also Zink v. United States, 929 F.2d 1015, 1020-21 (5th Cir.1991).
 
 
 18
 The Blakeman children challenge the district court's finding that Mrs. Blakeman has a rural homestead interest in the Randol Mill Property. They argue that, pursuant to section 41.002(c) of the Texas Property Code,[8] Mrs. Blakeman's homestead is urban as a matter of law. The Blakeman children take the position that, under this statute, the presence of any one of the factors enunciated in section 41.002(c) mandates an urban characterization.[9]
 
 
 19
 Mrs. Blakeman contends that the district court properly concluded that she has a rural homestead interest in the Randol Mill Property. Mrs. Blakeman argues that section 41.002(c) is not the exclusive test for determining the character of a homestead interest. She also asserts that, at most, section 41.002(c) creates a presumption of a rural homestead when the section applies and does not create any presumption when it does not.[10]
 
 
 20
 In Texas, the law recognizes both rural and urban homesteads. See Tex. Const. art. XVI, § 51;[11] Tex.Prop.Code Ann. § 41.002 (West Supp.1992);[12] see also Bradley, 960 F.2d at 506. An urban homestead cannot amount to more than one acre of land; a rural homestead cannot total more than 200 acres of land for a family, or 100 acres for a single adult person not otherwise entitled to a homestead. See Bradley, 960 F.2d at 506. While the characterization of a homestead is subject to change, the initial homestead characterization status, once established, is presumed to continue. See In re Niland, 825 F.2d 801, 808 (5th Cir.1987). "Once the claimant has established the homestead character of her property, the burden shifts to the creditor to disprove the existence of the homestead." Bradley, 960 F.2d at 507, citing Sullivan v. Barnett, 471 S.W.2d 39, 43 (Tex.1971); Lifemark Corp. v. Merritt, 655 S.W.2d 310, 314 (Tex.App.--Houston [14th Dist.] 1983, writ ref'd n.r.e.).[13]
 
 
 21
 Historically, Texas courts examining the homestead characterization question have regarded the issue whether a homestead is rural or urban as a question of fact. See Fajkus v. First Nat'l Bank of Giddings, 735 S.W.2d 882, 885 (Tex.App.--Austin 1987, writ denied), citing Wilder v. McConnell, 91 Tex. 600, 45 S.W. 145, 147 (1898); Roberts v. Cawthon, 26 Tex.Civ.App. 477, 63 S.W. 332, 334 (1901, no writ); First State Bank of Grapeland v. Brown, 490 S.W.2d 248, 250 (Tex.Civ.App.--Tyler 1973, no writ) (citations omitted); Kimmey v. Goodrum, 346 S.W.2d 901, 902 (Tex.Civ.App.--Waco 1961, writ ref'd n.r.e.) (citations omitted). Indeed, federal courts, interpreting and applying Texas law, have also considered this "urban"/"rural" differentiation as a determination rightly made by the factfinder. See In re Moody, 862 F.2d 1194, 1200 (5th Cir.1989) ("Whether property is rural or urban is a question of fact...."), cert denied sub nom., --- U.S. ----, 112 S.Ct. 1562, 118 L.Ed.2d 209 (1992), aff'g, In re Moody, 77 B.R. 580 (S.D.Tex.1987); In re Spencer, 109 B.R. 715, 716 (W.D.Tex.1989) ("question of rural or urban character is one of fact") (citation omitted); In re Moody, 77 B.R. 580, 591 (S.D.Tex.1987). In Moody, the bankruptcy court recognized that the analysis involved in differentiating rural from urban cannot be reduced to a simple formula: "[u]nder Texas law, no set formula exists to label land as rural or urban [and t]he courts have examined and balanced many factors." Moody, 77 B.R. at 591.
 
 
 22
 At the outset, we note that the Blakeman children argue a change in the law--that is, that section 41.002(c) (effective 1989) retroactively applies to previously designated homesteads--even where there were no other changed circumstances concerning the homestead. Therefore, we consider whether the legislative amendment to section 41.002(c) has altered our inquiry for determining whether a homestead is rural or urban; that is, we determine whether section 41.002(c) has overturned more than 100 years of Texas law to become the exclusive consideration for determining Texas homestead status.
 
 
 23
 This court's recent decision in In re Bradley aids us in the disposition of the present appeal. In re Bradley, 960 F.2d 502 (5th Cir.1992). In Bradley, this court addressed a bankruptcy appeal where the creditor challenged the rural characterization of the debtor's homestead property. After a review of Texas homestead law, we acknowledged that, under current law, "[i]t is unclear whether section 41.002(c) applies in all homestead disputes." Id. at 511 n. 18. We said that, "[a]t the least the definition of 'homestead' in section 41.002(c) applies in cases, like [Bradley ], involving the threatened foreclosure of homestead property." Id. (citation omitted). Accordingly, we determined that, because Bradley's homestead received no utility or other municipal services at the time she began to use the property as her homestead, Bradley was entitled to a rural homestead interest in the property. Id. at 511-12.
 
 
 24
 As we noted in Bradley, "section 41.002(c) might not displace the traditional common law definition of 'homestead' in all cases." In re Bradley, 960 F.2d 502, 511 n. 18 (5th Cir.1992). Prior to 1989, we said, the Texas courts generally examined several factors which were relevant to the determination whether a homestead was urban or rural.[14] We then construed section 41.002(c) to be a clarification of the test to determine homestead status. We did not then, nor do we now, construe section 41.002(c) to be the exclusive test to determine a property's homestead status: it is but one factor a court considers to determine whether the homestead is urban or rural. Therefore, we reject the Blakeman children's contention that a homestead property is urban simply because it is served by municipal utilities or fire and police protection.
 
 
 25
 The 1980 probate court judgment declared that the property was the rural homestead of C.E. and Mrs. Blakeman and ordered that Mrs. Blakeman have the use and benefit of the property for so long as she occupied the property as her homestead. The district court found that Mrs. Blakeman continued to occupy the property and that the evidence did not establish that Mrs. Blakeman had abandoned her rural homestead interest in the property. The Blakeman children have not pointed to any contradictory evidence. Accordingly, we hold that the district court was not clearly erroneous in concluding that Mrs. Blakeman's homestead interest in the property was rural.
 
 C
 
 26
 The district court, finding that Mrs. Blakeman's homestead interest was the economic equivalent of a life estate, used the Treasury tables set forth in Treasury Regulation § 20.2031-10(f)[15] to determine its value.[16] The district court measured the value of the estate as of the date of the tax assessment and determined that the value of Mrs. Blakeman's homestead estate (life estate) was 74.423 percent of the total value of the 100 acres. The district court then held that the government's lien attached only to the estate's remainder interest in the 100 acres and held that the remainder interest was worth 25.577 percent of the value of the homestead as of the date of the assessment.[17] The district court, however, found that "inequity would result if Mrs. Blakeman were to ... have the use of the homestead for the ten years that have passed since date of assessment, as she has had, and at the same time to receive sales proceeds representing the value of the homestead life estate for that same ten-year period," and concluded that Mrs. Blakeman's interest in the 100 acres should be determined by the value of Mrs. Blakeman's homestead interest as of the present date. Using the Treasury tables, then, the district court found Mrs. Blakeman's interest in the property to be 60.352 percent of the value of the land as of judgment. The district court then determined that the difference between the 74.423 percent representing the value of Mrs. Blakeman's homestead estate at date of assessment (June 17, 1980) and the 60.352 percent (Mrs. Blakeman's interest at judgment) should be given to the estate.[18]
 
 
 27
 The government argues that Mrs. Blakeman's interest in the Randol Mill Property should be valued as of the foreclosure date and contends that the district court erred in holding that the government's tax lien was limited to the estate's interest in the property on the lien's attachment date. Mrs. Blakeman, on the other hand, argues that the district court should have determined the interests of the respective parties as of the date the lien arose. In the alternative, Mrs. Blakeman argues that, if her homestead interest is to be valued as of the foreclosure date, it should be valued under the tables promulgated pursuant to 26 U.S.C. § 7520, and the district court erred in using the tables under Treas.Reg. § 20.2031-10.[19]
 
 
 28
 Mrs. Blakeman contends that she is entitled to at least 74.423 percent of the gross proceeds realized from the sale of the homestead property without any reduction to account for the period she occupied the property. Mrs. Blakeman relies on Harris v. United States, 764 F.2d 1126 (5th Cir.1985), contending that the government should be estopped from asserting a position contrary to that taken in Harris. We find Mrs. Blakeman's contention without merit.
 
 
 29
 It is well-settled that a federal tax lien reaches property and interests in property owned by the taxpayer on the date of the assessment, as well as property and interests in property acquired by the taxpayer from that date until the tax debt is satisfied. See Texas Commerce Bank--Fort Worth v. United States, 896 F.2d 152, 161 (5th Cir.1990) ("The lien arises on the date the IRS assesses unpaid taxes, applies to currently owned as well as after-acquired property, and continues until the taxpayer satisfies the debt or the statute of limitations runs."), citing 26 U.S.C. § 6322; Glass City Bank v. United States, 326 U.S. 265, 267, 66 S.Ct. 108, 110, 90 L.Ed. 56 (1945); United States v. Cache Valley Bank, 866 F.2d 1242, 1244 (10th Cir.1989); Prewitt v. United States, 792 F.2d 1353, 1355 (5th Cir.1986); see also Rice Investment Co. v. United States, 625 F.2d 565, 568 (5th Cir.1980) ("After-acquired property ... is reached by the lien.") (citations omitted). Therefore, the federal tax lien reaches the interests of C.E.'s estate as of the date of the foreclosure sale.
 
 
 30
 Mrs. Blakeman's next argument is that, if her homestead interest is to be valued as of the foreclosure date, her interest should be valued according to the tables promulgated pursuant to 26 U.S.C. § 7520.[20] The government agrees that the tables promulgated pursuant to 26 U.S.C. § 7520 are the proper tables to determine Mrs. Blakeman's interest in the property, but argues that, because Mrs. Blakeman failed to raise properly the issue of the applicability of § 7520 in the district court, she has waived her right to assert that the district court should have used the tables promulgated pursuant to 26 U.S.C. § 7520. We disagree.
 
 
 31
 Mrs. Blakeman raised her argument concerning § 7520 in her proposed findings of fact and conclusions of law, but she did not raise it again at trial.[21] We believe, in light of our decision in Laney v. Comm'r of Internal Revenue, 674 F.2d 342 (5th Cir.1982), and decisions of other courts of appeals, that that was sufficient to preserve Mrs. Blakeman's argument for appeal. In Laney the taxpayers urged an issue on appeal which they had not pleaded before the tax court, and which the tax court had not addressed. See id. at 351. The Commissioner contended that the taxpayers had waived the argument. See id. We held that the argument was not waived, because the taxpayers had included the issue in their trial memo before the tax court. See id. The D.C. Circuit reached a similar result in Kapar v. Kuwait Airways Corp., 845 F.2d 1100 (D.C.Cir.1988), where it held that an unpleaded issue was preserved for appeal by inclusion in memoranda of law submitted to the district court. See id. at 1103 n. 7. In Hellenic Lines, Ltd. v. United States, 512 F.2d 1196 (2d Cir.1975), the Second Circuit held that an issue was preserved for appeal because it was raised in proposed conclusions of law and in a post-trial memorandum. See id. at 1205 n. 15. Because in those cases memoranda of law and proposed conclusions of law were adequate to preserve issues for appeal, we conclude that Mrs. Blakeman's proposed findings and conclusions were adequate to preserve her argument under § 7520.
 
 
 32
 The holding in United States v. Indiana Bonding & Sur. Co., 625 F.2d 26 (5th Cir.1980), appears at first blush to support a contrary conclusion. In Indiana Bonding we held that the defendant, Indiana Bonding and Surety Company ("Indiana"), had waived its statute-of-limitations defense, because "[e]ven though this issue was listed as one of [Indiana's] contentions in the pretrial order ... Indiana's failure to present evidence in support of the defense before the district court preclude[d] our review of it." See Indiana Bonding, 625 F.2d at 29. However, Indiana Bonding is distinguishable. Because the issue waived there--whether a cause of action was barred by the statute of limitations--required the presentation of evidence, we recognized Indiana's failure to present evidence as a waiver of the issue.[22] See id. ("Indiana's failure to present evidence in support of the defense before the district court precludes our review of it here."). In this case, by contrast, there was no need for Mrs. Blakeman to offer evidence regarding the applicability of § 7520, because the applicability of that section followed automatically from the date of valuation of Mrs. Blakeman's homestead interest.[23] Because it was unnecessary for Mrs. Blakeman to present evidence, we do not recognize her failure to do so as a waiver of her argument. Therefore, the logic of Indiana Bonding lacks force here, and we believe that Laney, Kapar, and Hellenic Lines offer better guidance for the resolution of this dispute.
 
 
 33
 Because Mrs. Blakeman did not waive her argument under § 7520, and because the government concedes that § 7520 is applicable, we reverse and remand so that Mrs. Blakeman's homestead interest may be valued according to the tables promulgated pursuant to 26 U.S.C. § 7520.
 
 D
 
 34
 Mrs. Blakeman argues that she is entitled to compensation for taxes she will pay due to the sale of her homestead property. Mrs. Blakeman did not raise this issue in the district court, but she contends on appeal that Gibson v. United States, 761 F.Supp. 685 (C.D.Cal.1991), presents new law warranting this court's examination of the question whether she should be compensated for the tax consequences of selling the homestead property.
 
 
 35
 We generally do not allow parties to raise issues for the first time on appeal. See Colburn v. Bunge Towing, 883 F.2d 372, 375 (5th Cir.1989), citing Edwards v. Sears, Roebuck & Co., 512 F.2d 276 (5th Cir.1975) ("We are reluctant to address for the first time on appeal alleged errors, which the trial court was not given an opportunity to consider and correct"). We make an exception to this general rule, however, when this prohibition would result in a "substantial miscarriage of justice." Id.
 
 
 36
 The government argues that a substantial miscarriage of justice would not result if Mrs. Blakeman was prohibited from raising this assertion for the first time on appeal.[24] We are not persuaded that our refusal to allow Mrs. Blakeman to raise this issue on appeal would result in a substantial miscarriage of justice. Indeed in her brief, Mrs. Blakeman cites a case from the Second Circuit which, she argues, stands for the proposition that the costs and expenses attendant to section 7403 judicial foreclosure proceedings may be shifted to the government in order to make innocent third parties whole. See Reply Brief for Maudine Blakeman at 10, United States v. Blakeman, 750 F.Supp. 216 (5th Cir.1991), citing United States v. 110-118 Riverside Tenants Corp., 886 F.2d 514 (2d Cir.1989), cert. denied, 495 U.S. 956, 110 S.Ct. 2560, 109 L.Ed.2d 743 (1990). We see no reason why Mrs. Blakeman could not at least have presented in the district court her position that, pursuant to 26 U.S.C. § 7403, the district court could require the government to pay the costs and expenses attendant to the judicial foreclosure. Accordingly, we will not consider Mrs. Blakeman's untimely assertion.
 
 III
 
 37
 For the foregoing reasons, we AFFIRM in part and REVERSE and REMAND in part for the district court to determine the government's interest in the Randol Mill Property as of the date of the foreclosure sale, in accordance with the tables set forth in the Treasury Regulations, and for the district court to determine the value of Mrs. Blakeman's homestead interest according to the tables promulgated pursuant to 26 U.S.C. § 7520.
 
 ON PETITION FOR REHEARING
 
 38
 July 28, 1993.
 
 PER CURIAM:
 
 39
 IT IS ORDERED that the petition for rehearing filed in the above entitled and numbered cause be and the same is hereby GRANTED. We hereby WITHDRAW Parts II.C. and III. of our original opinion and substitute the following:
 
 
 
 [1]
 The United States also sought judgment against James Neal Blakeman, individually and as executor of C.E.'s estate, for monies paid out of the estate while federal estate tax remained unpaid. Ridglea Bank, the State of Texas, Tarrant County, Texas, Fort Worth Independent School District, and the City of Fort Worth, were also parties to the lawsuit
 
 
 [2]
 After the Probate Court judgment was entered, Mrs. Blakeman designated the Randol Mill Property as her homestead and has resided there continuously since C.E.'s death in 1978
 
 
 [3]
 The district court found Mrs. Blakeman had a 60.352 percent interest in the property and the government had a 25.577 percent interest in the property
 
 
 [4]
 The following is a summation of the parties' arguments on appeal:
 The government. The government argues that the district court erred in holding that the reach of the government's federal tax lien--arising from the unpaid estate tax--was limited to the estate's interest in the Randol Mill Property on the lien's attachment date. The government does not challenge the district court's finding relating to the special estate tax lien.
 The Blakeman Children. The Blakeman children argue that the government does not have a valid lien on the Randol Mill Property because the government's complaint contains no specific reference to 26 U.S.C. § 6321 and fails to state a claim based on the general tax lien. The Blakeman children argue, therefore, that the government is not entitled to foreclose on the Randol Mill Property. Alternatively, the Blakeman children argue, if the government has a valid lien on the Randol Mill Property and is entitled to foreclose, the district court erred in finding that Mrs. Blakeman has a rural homestead in the Randol Mill Property. The Blakeman children argue that the character of the homestead should be determined at the time of the trial or at the time of the foreclosure sale.
 Mrs. Blakeman. Mrs. Blakeman contends that the district court erred in failing to value her homestead interest as of June 17, 1980--the date the general tax lien attached to the remainder interest in the homestead property. Mrs. Blakeman argues that she is entitled to at least 74.42 percent of the gross proceeds from the sale of the Randol Mill Property, without any reduction to account for the period she occupied the property. Mrs. Blakeman also contends that she should be compensated for the taxes she will pay as a result of a sale of her homestead interest.
 Other defendants. Ridglea Bank, State of Texas, Tarrant County, Texas, Fort Worth Independent School District, and the City of Fort Worth did not appeal.
 
 
 [5]
 The district court found that:
 Although it is not drawn as articulately as might be desired, plaintiff's complaint constitutes a claim to foreclose on the general federal tax lien described in 26 U.S.C. § 6321 and is sufficient to give defendants notice of such a claim. Conley v. Gibson, 355 U.S. 41, 47, 48 (1957).
 Requirements of the general tax lien include: (a) assessment within three years after a return is filed, and (b) collection began within six years of assessment. 26 U.S.C. § 6501(a); 26 U.S.C. § 6502(a). The parties have stipulated that the following assessments were made:
 June 17, 1980 $124,820.93 estate taxes
 $ 12,651.37 interest
 July 21, 1980 $ 31,205.23 penalties
 $ 1,395.26 interest
 August 18, 1980 $ 1,436.30 interest
 As a result of a payment and the abatement of a delinquent penalty, which was stipulated, the balance of the assessments due was $90,495.65 as of July 21, 1980. There is apparently no dispute that the assessments were timely.... [O]n March 16, 1981, plaintiff filed a notice of federal tax lien with the Clerk of Tarrant County, Texas; ... plaintiff made demand on defendant James Neal Blakeman, as executor of the estate of C.E. Blakeman, deceased; ... the taxes were not paid; ... the plaintiff filed its complaint June 16, 1986. Accordingly, the Court finds that plaintiff's suit to enforce its general tax lien was timely filed.
 
 
 [750]
 F.Supp. at 221 ("Memorandum Opinion"). The district court found the special federal estate tax lien had expired as a matter of law
 
 
 [6]
 The government suggests that this is the case because:
 (1) the government's motion for partial summary judgment explicitly stated that its legal theory was based upon the § 6321 general tax lien;
 (2) following the pretrial conference, the parties briefed the issue whether the government's liens had expired and these briefs dealt with both the general and the special tax liens; and
 (3) on the morning of trial, the district court notified the parties that it determined the special lien had expired, but the general tax lien was still in effect and would be the basis for the government's claim.
 
 
 [7]
 The district court found:
 
 
 [1]
 Until the death of C.E. Blakeman, the Randol Mill property was the rural homestead of C.E. Blakeman and Mrs. Blakeman
 
 
 [2]
 At all times since the death of C.E. Blakeman, Mrs. Blakeman has continued to use, occupy and claim at least a 100-acre part of the Randol Mill property as her homestead
 
 
 [3]
 The 100-acre part of the Randol Mill property Mrs. Blakeman selected as her homestead pursuant to the May 7, 1980, Probate Court judgment is legally described in Exhibit "B" to the judgment
 
 
 [4]
 Mrs. Blakeman has never abandoned the 100 acres as her rural homestead
 
 
 [5]
 The 100 acres has been the homestead of Mrs. Blakeman at all times since the death of C.E. Blakeman
 Memorandum Opinion at 10-11.
 
 
 [8]
 Section 41.002(c) states:
 (c) A homestead is considered to be rural if, at the time the designation is made, the property is not served by municipal utilities and fire and police protection.
 Tex.Prop.Code Ann. § 41.002(c) (West Supp.1992).
 
 
 [9]
 Further, they argue that, even if the property is not served by municipal utilities, police or fire protection, there would still remain a fact question as to urban or rural status. In effect, the Blakeman children suggest a two-pronged analysis:
 They propose that we inquire as to whether the property is served by municipal utilities, police or fire protection:
 --If the answer is "yes," they propose that we classify it "urban" as a matter of law;
 --If the answer is "no," they propose that this presents a fact question to be decided by the finder of fact.
 
 
 [10]
 On appeal, the government does not take a position concerning the character of Mrs. Blakeman's homestead interest. The government states, however, that "[s]hould this Court decide this issue in the children's favor, the Government's lien would necessarily attach to the estate's increased interest in the Randol Mill property."
 
 
 [11]
 Section 51 provides,
 The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village, shall consist of lot or lots amounting to not more than one acre of land, together with any improvements on the land; provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the homestead claimant, whether a single adult person, or the head of a family; provided also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired.
 
 
 [12]
 Section 41.002, "Definition of Homestead", provides:
 (a) If used for the purposes of an urban home or as a place to exercise a calling or business in the same urban area, the homestead of a family or a single, adult person, not otherwise entitled to a homestead, shall consist of not more than one acre of land which may be in one or more lots, together with any improvements thereon.
 (b) If used for the purpose of a rural home, the homestead shall consist of:
 (1) for a family, not more than 200 acres, which may be in one or more parcels, with the improvements thereon; or
 (2) for a single, adult person, not otherwise entitled to a homestead, not more than 100 acres, which may be in one or more parcels, with the improvements thereon.
 (c) A homestead is considered to be rural if, at the time the designation is made, the property is not served by municipal utilities and fire and police protection.
 (d) The definition of a homestead as provided in this section applies to all homesteads in this state whenever created.
 Tex.Prop.Code Ann. § 41.002 (West Supp.1992). This section of the Texas Property Code was amended and subsection (c) became effective August 28, 1989.
 
 
 [13]
 After the property has been dedicated as homestead property, the only way for the property to lose its homestead status is by death, abandonment, or alienation. See Garrard v. Henderson, 209 S.W.2d 225, 229 (Tex.Civ.App.--Dallas 1948, no writ). To prove the discontinuance of a homestead, a party may demonstrate that the homestead claimant abandoned the property--that is, the homestead claimant had the permanent intent to cease use of the property for homestead purposes. See West Texas State Bank of Snyder v. Helms, 326 S.W.2d 47, 49 (Tex.Civ.App.--Eastland 1959, no writ). See also Niland, 825 F.2d at 808, quoting McFarland v. Rousseau, 667 S.W.2d 929, 931 (Tex.App.--Corpus Christi 1984, no writ)
 
 
 [14]
 These factors include: "(1) the location of the land with respect to the limits of the municipality; (2) the situs of the lot in question; (3) the existence of municipal utilities and services; (4) the use of the lot and adjacent property; and (5) the presence of platted streets, blocks, and the like." Id., at 511-12 n 18, citing Vistron Corp. v. Winstead, 521 S.W.2d 754, 755 (Tex.Civ.App.--Eastland 1975, no writ); Rockett v. Williams, 78 S.W.2d 1077, 1078 (Tex.Civ.App.--Dallas, 1935, writ dism'd); Purdy v. Grove, 35 S.W.2d 1078, 1081-82 (Tex.Civ.App.--Eastland 1931, writ ref'd); 43 Tex.Jur.3d Homesteads § 15 (1985)
 
 
 [15]
 See 26 C.F.R. § 20.2031-10(f)
 
 
 [16]
 The court found that the parties agreed that "the value of Mrs. Blakeman's homestead estate is the economic equivalent of a life estate and that use of the tables set forth in Treas.Reg. § 20.2031-10(f) in determining the value of said estate is appropriate." United States v. Blakeman, 750 F.Supp. 216, 222 (N.D.Tex.1990) ("Memorandum Opinion")
 
 
 [17]
 The court so reasoned because "the general federal tax lien described in 26 U.S.C. § 6321 and on which federal levy may be had under 26 U.S.C. § 7403(a) attaches only to the interest of the delinquent taxpayer in particular property and not to the entire property." See Blakeman, 750 F.Supp. at 222 ("Memorandum Opinion") (citing United States v. Rodgers, 461 U.S. 677, 690, 103 S.Ct. 2132, 2140-41, 76 L.Ed.2d 236 (1983)). This amount represents 14.071 percent
 
 
 [18]
 See Blakeman, 750 F.Supp. at 222 ("Memorandum Opinion")
 
 
 [19]
 Federal district courts in tax foreclosure cases are authorized to order a sale of the homestead property and distribute the sale proceeds in accordance with the interests of the parties. See 26 U.S.C. § 7403(c). Section 7403(c) does not, however, provide a precise method of (1) valuing the interests of the parties to the foreclosure and (2) distributing the sales proceeds realized on the foreclosure sale. Id
 
 
 [20]
 Mrs. Blakeman contends that the district court erred when it stated that she agreed that the tables under Treas.Reg. § 20.2031-10 should be used to determine the extent of her homestead interest
 
 
 [21]
 Mrs. Blakeman's proposed findings and conclusions stated:
 
 
 [3]
 In 1988, congress enacted Section 7520, which is the determining provision for valuing life estates and remainder interests at this time. Section 7520 requires the life estate and remainder to be determined
 a. Under the tables prescribed by the Secretary, and
 b. By using an interest rate equal to 120% of the Federal midterm rate in effect under Section 1274(d)(1) for the month in which the valuation date falls.
 If the date of measurement is the date of foreclosure, then the Federal midterm rate for September 1990 is 8.53%. The second element of the formula is 120% of the Federal midterm rate, which is 10.28%. Table R(1) (located at [paragraph] 311AB of CCH Standard Federal Tax Reporter) for a person age 62 (Maudine Blakeman's current age) at 10.2% reflects a remainder factor of .25532% [sic], and therefore, results in a life estate factor of 74.468% of the gross sale price of the property sold at foreclosure.
 Record on Appeal, vol. 4, at 866-67.
 
 
 [22]
 We do not mean to suggest that, in every case where the admission of evidence is appropriate to the resolution of a disputed issue, failure to elicit testimony leads to waiver of the issue. That question is not before us, and we express no opinion on the subject
 
 
 [23]
 Section 7520 applies if the valuation date occurs on or after May 1, 1989. The district court determined that the valuation date was the date of foreclosure, and ordered a foreclosure sale within 120 days of October 30, 1990. Therefore, the valuation date occurred after May 1, 1989, and it automatically followed that § 7520 applied
 
 
 [24]
 Moreover, the government argues, there is nothing in 26 U.S.C. § 7403 or its legislative history to suggest that a nonliable third party's tax liability should be paid out of the proceeds of a foreclosure sale