John A. LANEY and Jeanine Laney, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 80–1937.

United States Court of Appeals, Fifth Circuit.*
Unit A

April 26, 1982.

Rehearing Denied May 28, 1982.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Sec., John F. Murray, Richard Farber, Attys., Tax Div., U. S. Dept. of Justice, Kenneth W. Gideon, Chief Counsel, Internal Revenue Service, Thomas M. Preston, Jr., Atty., Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before BROWN and GOLDBERG, Circuit Judges.**

JOHN R. BROWN, Circuit Judge:

John and Jeanine Laney appeal from a decision of the United States Tax Court upholding the Internal Revenue Service's determination of deficiencies in their federal income tax for the tax years 1971, 1972 and 1973. The fundamental question on appeal is whether the Tax Court correctly interpreted one path of the maze of financial transactions in which the Laneys were involved as a limited partnership with recourse liabilities, so that Mrs. Laney could only deduct losses up to the amount of her adjusted basis, here $1000. Unable to term the Tax Court's reasoning clearly erroneous, we affirm.

## I.

### Facts

John Laney is a self-employed financial adviser and real estate broker-promoter in Houston, Texas. In late 1970, he became interested in developing certain property in Harris County, Texas for apartment dwellings. On January 5, 1971, the property owner agreed to sell the real estate, through a nominee, to Mr. Laney for a purchase price of $1,000,000.

Laney then contacted W. T. Duncan about his plans. They agreed to organize a development corporation and planned to form a limited partnership in which the

Jeffrey H. Hubbard & Associates, Inc., Jeffrey H. Hubbard, Houston, Tex., for petitioners-appellants.

---

** Due to his death on December 22, 1981, Judge Ainsworth did not participate in this decision.

The case is being decided by a quorum. 28 U.S.C. § 46(d).

corporation would be the sole general partner and in which Mrs. Laney, Duncan and Leo Covington would be limited partners.

On February 3, 1971, Hollister Hempstead Corporation (the Corporation) was organized under the laws of Texas. It had three shareholders: Duncan and Covington each owned 25% of the stock and Mr. Laney owned the remaining 50%. From its organization until mid-1973, Duncan was president.

Shortly after its formation, the Corporation applied for a loan of $1,550,000 to purchase the property. On February 5, 1971, Duncan, on behalf of the Corporation, executed a mortgage loan note for $1,550,-000. The lender, Surety Savings Association, pursuant to a Deed of Trust, obtained a lien on the property securing the amount of the note. Duncan guaranteed the note and Mr. Laney, in turn, indemnified him against any losses.

Following its acquisition of the property, the Corporation arranged for an additional $20,025,000 in construction loans from three different lenders: B. F. Saul Real Estate Investment Trust (the Trust), First Mortgage Investors (FMI) and Fidelity Mortgage Investors (Fidelity). All the financing was secured solely in the name of the Corporation, which was principally liable. Although, as president, Duncan guaranteed payment of the notes, Mr. Laney indemnified him.

On November 8, 1971, the Corporation, Duncan, Covington and Mrs. Laney entered into a limited partnership in which the Corporation was the only general partner. That same day, the Corporation—without written notice to its various lenders and without recording—deeded the Harris County real estate to the limited partnership. The limited partnership, named Hollister Hempstead Ltd., received capital contributions of $500 each from Covington and Duncan and $1000 from Mrs. Jeanine Laney. The articles of limited partnership, which were not actually filed with the Texas Secretary of State until the following January 21, expressly stated that the limited partners would not be personally liable

for any of the partnership debts beyond their capital contributions. The Corporation was not required to make a capital contribution.

On June 15, 1972, the limited partnership was dissolved and, in its stead, there arose a new limited partnership, Hollister Ltd., in which the corporation and Mrs. Laney were both general partners.

By March 1973, the project had collapsed. The lenders foreclosed on the real estate. On July 2, 1973, the Corporation filed for bankruptcy. The State revoked its corporate charter on March 22, 1974, and the case was officially closed with an adjudication of bankruptcy on April 9, 1975.

For 1971, the Laneys reported a loss from the limited partnership of $456,997.02 on their federal income tax return. For 1972, they reported a loss from the original limited partnership (Hollister Hempstead Ltd.) of $241,469.34 and a loss of $555,962 from the second limited partnership (Hollister Ltd.). On their 1973 return, the Laneys claimed a loss of $44,034 from the termination of Mrs. Laney's partnership interest in Hollister, Ltd. The partnership reported her loss as $22,934, however, and issued a Schedule K–1 to Mrs. Laney which showed that amount.

The Laneys employed an accountant (Price) to prepare their federal tax returns for the years 1971, 1972 and 1973. In each year he filed a request for and obtained an extension of time. Even with the extension, he filed the returns late.

The Commissioner challenged the Laneys' deductions in 1971 and 1972 of losses from the original (Hollister Hempstead Ltd.) limited partnership. Reasoning that a limited partner can only deduct up to his adjusted basis in the partnership, he disallowed all but $1000 of the $456,997.02 deduction in 1971 and the entire $241,469.34 deduction in 1972. He allowed the $555,962 loss in 1972 since that represented Mrs. Laney's interest as a general partner in the second limited partnership. The Commissioner also reduced the $44,034 loss claimed in 1973 to the amount reported on the Schedule K–1 that

the partnership issued and assessed penalties for late filing for all three years.

The Tax Court on December 6, 1979 filed memorandum findings of fact and opinion upholding the Commissioner's actions for both the disallowances and the late filing penalties. It entered its decision on March 12, 1980 and on May 19, 1980 denied the Laneys' motion to revise decision and to reconsider factual findings. The Laneys have appealed.

### Scope of Review

■ The Tax Court's findings of fact, like those of a District Court, are subject to the "clearly erroneous" test of F.R.Civ.P. 52(a). *Commissioner v. Duberstein*, 363 U.S. 278, 291, 80 S.Ct. 1190, 1200, 4 L.Ed.2d 1218, 1228 (1960); Internal Revenue Code of 1954 § 7482(a).[1]

### II.

### Limited Partnership: To Be or Not To Be?

The Commissioner disallowed the Laneys' deductions because they exceeded Mrs. Laney's $1000 contribution to capital in the limited partnership. In order to understand his action, we must roll up our sleeves and delve into the latticework of the Internal Revenue Code of 1954, however much we might prefer not to.

■ Section 701 provides that a partnership is not subject to income tax, but persons carrying on business as partners are liable for tax in their individual capacities.[2] Under § 702, each partner shall include in his income his distributive share of the partnership gains and losses.[3] Skipping § 703, we turn to § 704, which states that a partner determines his distributive share of income, gains, loss, deduction, or credit according to the partnership agreement. Sub-section (d) of § 704 allows a partner to deduct his distributive share of the partnership loss only to the extent of his adjusted basis in the partnership at the end of the year in which the loss took place.[4] Has our journey ended? No. In order to comprehend § 704(d), we must now turn to § 722,[5] which defines "basis" in a partnership. Quite simply, the rule is thus: the basis of an interest in a partnership acquired by a contribution of money or property is the

1. Courts of review.
   (a) Jurisdiction. The United States Courts of Appeals shall have exclusive jurisdiction to review the decisions of the Tax Court, except as provided in section 1254 of Title 28 of the United States Code [28 USCS § 1254], in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury; and the judgment of any such court shall be final, except that it shall be subject to review by the Supreme Court of the United States upon certiorari, in the manner provided in section 1254 of Title 28 of the United States Code.

2. Partners, not partnership, subject to tax.
   A partnership as such shall not be subject to the income tax imposed by this chapter. Persons carrying on business as partners shall be liable for income tax only in their separate or individual capacities.

3. Income and credits of partner.
   (a) General rule. In determining his income tax, each partner shall take into account separately his distributive share of the partnership's—
   (1) gains and losses
   \* \* \* \* \* \*

   (9) taxable income or loss, exclusive of items requiring separate computation under other paragraphs of this subsection.

4. Partner's distributive share.
   (a) Effect of partnership agreement. A partner's distributive share of income, gain, loss, deduction, or credit shall, except as otherwise provided in this section, be determined by the partnership agreement.
   \* \* \* \* \* \*
   (d) Limitation on allowance of losses. A partner's distributive share of partnership loss (including capital loss) shall be allowed only to the extent of the adjusted basis of such partner's interest in the partnership at the end of the partnership year in which such loss occurred. Any excess of such loss over such basis shall be allowed as a deduction at the end of the partnership year in which such excess is repaid to the partnership.

5. Basis of contributing partner's interest.
   The basis of an interest in a partnership acquired by a contribution of property, including money, to the partnership shall be the amount of such money and the adjusted basis of such property to the contributing partner at the time of the contribution.

amount of such money or the adjusted basis of such property. Winding our merry way through this maze of Code provisions, we come next to § 752, which provides that a partner may increase his adjusted basis in the partnership to correspond to any increase in his share of partnership liabilities.[6] Turning now to the Regulations that implement this section, we find § 1.752–1, "Treatment of certain liabilities",[7] which states that where none of the partners have any liability for a partnership liability, then all partners, limited and general, share that liability under § 752(c) in the proportion in which they share profits. As an example, it gives a mortgage on real estate where none of the partners have acquired any personal liability. Essentially, § 1.752–1 distinguishes between two terms of art: non-recourse liabilities, defined as those partnership debts for which none of the partners, general or limited, have any personal liability, and recourse liabilities which, in the marvelous logic of the Internal Revenue Code, are defined as those which are non-non recourse. A partner may add non-recourse liabilities to his basis.

What does this all mean? Mrs. Laney may deduct partnership losses up to the amount of her adjusted basis in the limited partnership. No argument there. Determination of the amount of their adjusted basis depends, in turn, on whether the substantial debts that the real estate venture incurred were, as to the limited partnership, recourse or non-recourse. On that point, the argument commences.

**6.** Treatment of certain liabilities.

(a) Increase in partner's liabilities. Any increase in a partner's share of the liabilities of a partnership, or any increase in a partner's individual liabilities by reason of the assumption by such partner of partnership liabilities, shall be considered as a contribution of money by such partner to the partnership.

**7.** § 1.752–1 *Treatment of certain liabilities*

\* \* \* \* \* \*

(e) *Partner's share of partnership liabilities.* A partner's share of partnership liabilities shall be determined in accordance with his ratio for sharing losses under the partnership agreement. In the case of a limited partnership, a limited partner's share of partnership liabilities

*Kingbay v. Commissioner*, 46 T.C. 147 (1966), furnishes a useful starting-point, for the facts of the case are in many ways indistinguishable from the Laneys' action. Mr. Kingbay was sole shareholder in Kingbay Properties, Inc. With his wife he formed a limited partnership, Kingbay Properties Co., to develop apartment real estate. Kingbay Properties, Inc. was the sole general partner and the Kingbays were limited partners. The articles of limited partnership provided for a minimal capital contribution, stated that the limited partners need not make additional contributions, and allocated profits and losses in the proportion of capital contributions, with the proviso that the limited partners should at no time become liable for any obligations or losses over and above their capital contributions.

The partnership obtained several tracts of land in Minnesota on which it constructed apartments. The corporation, however, purchased the land in its own name and executed the notes and deeds to secure financing and construction.

Mr. Kingbay made various advances to the partnership, totalling $1,044,143.54, in the course of the years 1958–1961, for which he received promissory notes payable upon demand.

The partnership suffered losses in 1959 and 1960, and the Kingbays deducted those amounts on their federal income tax returns. The Commissioner disallowed the deductions to the extent they exceeded the Kingbays' adjusted basis, $5079.16, which

shall not exceed the difference between his actual contribution credited to him by the partnership and the total contribution which he is obligated to make under the limited partnership agreement. However, *where none of the partners have any personal liability* with respect to a partnership liability (as in the case of a mortgage on real estate acquired by the partnership without the assumption by the partnership *or any of the partners* of any liability on the mortgage), then all partners, including limited partners, shall be considered as sharing such liability under section 752(c) in the same proportion as they share the profits. \* \* \* (emphasis added).

was the total amount of capital contributions they had made to the partnership.

The Tax Court upheld the Commissioner's action, rejecting arguments similar to those Mrs. Laney advances in this Court. The Kingbays argued that the Court should disregard the fact that the corporation held the property and was liable on the notes. Since in substance no partner of the limited partnership was personally liable for the mortgage debt, they proposed to disregard the corporate form. The corporation, they contended, was a dummy partner, since it had only a $1000 capital investment and was wholly owned by Mr. Kingbay. The Court disagreed. Refusing to disregard the corporate form, the Tax Court held that the corporation was liable on the mortgage debts, even if, practically speaking, its liability was limited to the $1000 of capital. Therefore the liabilities were recourse and, pursuant to § 1.752–1 of the Regulations, the limited partners could not add the mortgage liabilities to their basis. *See also Carriage Square, Inc. v. Commissioner*, 69 T.C. 119, 127 (1977) (Tannenwald, J., dissenting).

The Tax Court grounded this seemingly technical construction on an analysis of the complex financial structure that the Kingbays had devised. Finding that they must have had some reason for structuring the transaction the way they did, most likely to limit their liability to the rather small capital contribution, the Tax Court refused to overlook that form when it no longer was in the Kingbays' interest. In effect, the Tax Court concluded, they could not have their cake and eat it too.

This extended analysis, we think, sheds much light on this case. Here, once again, we have a corporate general partner and individual limited partner. Here, too, the corporation was liable on its mortgage notes even after it transferred the Hollister Hempstead properties—without written notice to the creditors—to the limited partnership. Thus Mrs. Laney falls within the exact wording of § 1.752–1. But unlike *Kingbay*, Mr. Laney, who played an active role as shareholder and officer in the Corporation, was not a member of the limited partnership.

Mrs. Laney seeks to distinguish *Kingbay*, as well she might, on the following basis. First, she points out that Mr. Laney had agreed to indemnify Duncan for any losses he might incur. In those circumstances, she contends, Mr. Laney, who by virtue of the Texas community property laws was also a limited partner, was "at risk" and can deduct his losses.

■ This claim has no merit. Community property rules do not wipe out the distinction between husband and wife, nor do they operate to erase valid transactions made by one spouse. Mr. Laney through his wife had a community property interest in the limited partnership, it is true, but he was not himself a limited partner.

■ Second, the Laneys tell us, there was an oral general partnership formed between themselves, the Corporation, Covington, and Duncan in early 1971. We find nothing in the record to substantiate this claim. Sufficient evidence does exist to support the Tax Court's finding that no general partnership existed. Mr. Laney, in a January 1971 letter to Duncan, outlined his plans for a *limited* partnership. Every loan application listed the Corporation—not all four parties—as the owner of the land. And, of course, the subsequently-filed articles of limited partnership support this finding. We certainly cannot term the Tax Court's finding clearly erroneous.

■ Mrs. Laney next argues that, since the articles were not filed until January 1972, the limited partnership did not come into being until that time and was, by operation of law, a general partnership in the meantime. We disagree. *Voudouris v. Walter E. Heller & Co.*, 560 S.W.2d 202 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ), establishes that failure to comply with the requirements for formation of a limited partnership does not a general partnership make. "The failure to file the limited partnership agreement with the Secretary of State did not result in the formation of a general partnership." 560 S.W.2d at 207. The Texas Uniform Limited Partner-

ship Act, Tex.Rev.Civ.Stat.Ann., art. 6132a, Sec. 3, specifically states "[a] limited partnership is formed if there has been substantial compliance in good faith with the requirements of [Section 3]."[8] As the only requirement that Mrs. Laney missed was filing with the Secretary of State and payment of the .5% filing fee, we agree with the Tax Court that she substantially complied. Thus, a limited partnership came into being in November 1971.

*Garrett v. Koepke*, 569 S.W.2d 568 (Tex. Civ.App.—Dallas 1978, writ ref'd. n. r. e.), provides support for this view. Business associates set up a limited partnership but failed to file the certificate with the Secretary of State. The Court found such failure did not revoke the limited partnership. "We see no logical reason to strip appellees of their limited liability under their partnership agreement merely because they failed to comply with art. 6132a." *Id.* at 570. Reasoning that the requirement was intended to provide notice to others, the Court refused to ignore the limited partnership form when the opposing parties had had notice. Nothing in *Garrett* will provide a life jacket to the Laneys on this issue.

Mrs. Laney also clings to *Delaney v. Fidelity Lease Limited*, 526 S.W.2d 543 (Tex. 1975). There, the Supreme Court of Texas, reversing the trial court's grant of summary judgment, held that limited partners in a limited partnership who also were officers of a corporation that was a general partner could become liable as general partners by taking an active part in the corporation's business. We point out that Mr. Laney is not a member of the limited partnership; *Delaney* is thus inapposite. In any case, the Supreme Court's statement, in dicta, that strict compliance with the limited partnership statute is necessary to avoid liability as a general partner, related to the requirement that a limited partner be a passive actor. It does not avail Mrs. Laney here, where she, as all concede, played no part in the affairs of the Corporation. Accordingly, we agree with the Tax Court that Mrs. Laney had effected a valid limited partnership in November 1971.

## III.

Having concluded that Mrs. Laney was a limited partner in a valid limited partnership, we now confront the question whether, as to the limited partnership, the mort-

**8.** Uniform Limited Partnership Act
Formation of limited partnership
Sec. 3. (a) Two (2) or more persons desiring to form a limited partnership shall:
(1) Sign and swear to a certificate, which shall state:
(A) The name of the partnership.
(B) The character of the business.
(C) The location of the principal place of business.
(D) The name and place of residence of each member; general and limited partners being respectively designated.
(E) The term for which the partnership is to exist.
(F) The amount of cash and a description of the agreed value of the other property contributed by each limited partner.
(G) The additional contributions, if any, agreed to be made by each limited partner and the times at which or events on the happening of which they shall be made.
(H) The time, if agreed upon, when the contribution of each limited partner is to be returned.
(I) The share of the profits or the other compensation by way of income which each limited partner shall receive by reason of his contribution.
(J) The right, if given, of a limited partner to substitute an assignee as contributor in his place, and the terms and conditions of the substitution.
(K) The right, if given, of the partners to admit additional limited partners.
(L) The right, if given, of one or more of the limited partners, as to contributions or as to compensation by way of income, and the nature of such priority.
(M) The right, if given, of the remaining general partner or partners to continue the business on the death, retirement or insanity of a general partner.
(N) The right, if given, of a limited partner to demand and receive property other than cash in return for his contribution.
(2) File for record the certificate in the office of the Secretary of State accompanied by the payment of a filing fee in the amount of Twenty-five Dollars ($25) made payable to the Secretary of State.
(b) A limited partnership is formed if there has been substantial compliance in good faith with the requirements of paragraph (a).

gage and other loans were recourse or non-recourse liabilities.

■ The Tax Court held that the debts were recourse liabilities since the Corporation remained liable even after it transferred the property to the limited partnership. We warn at the outset against confusing personal liability of the Corporation with its ability to meet those obligations. Whether or not the Corporation had the *means* to pay off the loans is, legally, irrelevant. The question for our decision, simply put, is: did the Corporation's personal liability on the notes operate to make the liabilities recourse liabilities of the limited partnership once the Corporation had become a general partner?

Section 1.752–1 dictates an answer to this question, and that answer is yes. Facing the identical issue, the Tax Court in *Kingbay* held that one of the partners *did* have personal liability with regard to a partnership liability. Although the parenthetical phrase in the Regulations "(as in the case of a mortgage on real estate acquired by the partnership without the assumption by the partnership or any of the partners of any liability on the mortgage)" technically applies, we cannot overlook the fact that the corporate general partner *previously had assumed personal liability and brought that personal liability with it into the limited partnership.* Therefore the Corporation—a partner—had personal liability. Only where "none of the partners have any personal liability" is a debt a non-recourse obligation under the Regulation. The liabilities, then, were recourse liabilities and thus could not be added to Mrs. Laney's basis for loss deductions in 1971 and 1972.

Such a holding indeed seems harsh, for the Laneys, after all, incurred real losses of $698,466.36 from their real estate venture in 1971 and 1972. While it may appear overly technical to insist that they may not deduct those losses, we believe that, having made her proverbial bed in the four poster designed by Congress, Mrs. Laney must lie on it, however uncomfortable a resting spot it now proves.

Mr. Laney and his associates borrowed more than $20,000,000 to acquire and develop real estate. Banks do not lend such amounts of greenbacks to financial greenhorns. No babe-in-the-woods, Mr. Laney must have known and understood the plan he and his lawyer drafted for financing the deal. The transactions obviously were carefully structured, with Mr. Laney and Mrs. Laney holding separate interests, one in the Corporation and one in the limited partnership. It seems unlikely that that arrangement occurred by mistake or accident. Far more likely, the Laneys had good business reasons—such as limiting their liabilities in case of difficulties—for arranging their financial matters in this fashion. Having done so, they cannot now disavow any knowledge of their lawyer's actions. Such a course, indeed, would be a mission impossible.

The Laneys point out that of all the parties to the original real estate venture, Mr. Laney (along with his wife) alone had money at risk. By virtue of his indemnification agreement with Duncan, he shouldered the burden of any losses. The Laneys, we conclude, must have had good business reasons to structure their dealings in this manner. We do not find it necessary to figure out those reasons, nor to second guess their decision. It suffices, under the literal terms of § 1.752–1 and as the Tax Court in *Kingbay* held, that they must live with the consequences.

## IV.

### *Oh, where, oh where has the $21,100 gone?*

■ The Laneys argue that the Tax Court erred in affirming the Commissioner's decision that Mrs. Laney could only deduct $22,934 from the termination of her partnership interest in Hollister Ltd. because the partnership's Schedule K–1 showed that she already had received a distribution of $21,100. We are unpersuaded. A taxpayer carries the burden of disproving the Commissioner's disallowance of a deduction, *Welch v. Helvering*, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933); *Demkowicz v. C. I. R.*, 551 F.2d 929 (3rd Cir.

1977); our tax system could hardly hope to survive otherwise. Here the Laneys, without introducing any financial records or other documentary evidence tending to disprove or contradict the reliability of the Schedule K–1, explain that their testimony that they did not receive $21,100—they would, after all, hardly argue to the contrary—coupled with the Commissioner's "impeachment" of the veracity of the Schedule K–1, meet this burden.

*Demkowicz*, on which the Laneys rely, is a curious case indeed. The Court does state that "[b]y his unequivocal denial that he received any personal benefit ... taxpayer overcame the presumption of correctness which arises from the Commissioner's determination." 551 F.2d at 931, n.6. Since the taxpayer will always—absent some suicidal tendencies or masochistic desire to pay taxes he argues are not due—give such testimony, the Court's holding effectively guts the *Welch* burden. Yet in the facts of *Demkowicz*, we are unable to find any mention of tangible evidence, such as the Schedule K–1, to substantiate the Commissioner's finding. In that case, it reduced to the Commissioner's word against that of the taxpayer. In those unusual circumstances, the Court could indeed find that the taxpayer's testimony, however self-serving, met the burden of refuting the Commissioner's statement. In the present case, by contrast, we have a Schedule K–1, filled out by the partnership under penalty of law, which states that Mrs. Laney's share of the loss was only $22,934. The K–1, we believe, provides the tangible proof lacking in *Demkowicz*. It would take more than the Laneys' testimony to overcome the presumption of correctness. As they produced no other evidence, we must accept the Tax Court's determination as correct.

## V.

### Filing Penalties

■ The Laneys also contest the Commissioner's assessment of late filing penalties for the tax years 1971, 1972 and 1973. Attempting to shift the blame to their accountant, they argue, in effect, that they satisfied the requirement of I.R.C. § 6651(a) [9] by urging him to file on time and that they cannot be blamed if he failed to do so.

That argument will not fly. In *Logan Lumber Co. v. C. I. R.*, 365 F.2d 846, 854 (5th Cir. 1966), Judge Rives brushed aside the argument that the taxpayer's reliance on his accountant constituted reasonable cause to excuse the late filing. The company's treasurer had signed a "tentative return" two days before the due date, demonstrating that he knew of the impending deadline. "[Taxpayer] is no better off even if it relied on its accountant to prepare its returns. The negligent failure of an accountant ... to prepare a taxpayer's return is not reasonable cause for a failure to timely file...." *See also U.S. v. Kroll*, 547 F.2d 393 (7th Cir. 1977) (reliance on lawyer misplaced). Were the taxpayer's duty to file on time fulfilled merely because he employed an accountant or lawyer to prepare or review his return prior to the filing date, our voluntary system would forthwith screech to a halt. We affirm the Tax Court's determination that the Laneys must pay the penalties for late filing.

## VI.

### Recapture

As one last point, the Laneys assert that the Tax Court erred in concluding that the

---

**9.** Failure to file tax return or to pay tax.

(a) Addition to the tax. In case of failure—
(1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), subchapter A of chapter 51 (relating to distilled spirits, wines, and beer), or of subchapter A of chapter 52 (relating to tobacco, cigars, cigarettes, and cigarette papers and tubes), or of subchapter A of chapter 53 (relating to machine guns and certain other firearms), on the date prescribed there-

for (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate;

general partners of the second limited partnership, Hollister Ltd., on March 12, 1973 "assigned their interest in the partnership property to representatives of the various construction lenders." Memo. op. at 16. A partnership interest, they point out, is not assignable under Texas law, *see* Tex.Rev. Civ.Stat.Ann., art. 6132b, § 25(2)(b).[10] If the Court was correct, the Laneys add, then they had disposed of their interest and need not on their 1973 return have recaptured $957,633 resulting from the foreclosure sale of the partnership property. In the alternative, they suggest that they assigned a portion of their interest and should have recaptured only that portion of the foreclosure sale price which corresponded to their 39.5% remaining interest in the partnership. The Commissioner responds that the Laneys did not raise this argument in their initial pleadings in the Tax Court and therefore have waived it. Moreover, the Laneys have confused their interest in two distinct limited partnerships, Hollister Hemptstead Ltd. and Hollister, Ltd. The disallowances relate to their losses in the initial limited partnership while the recapture involves the second limited partnership. To allow the Laneys to avoid recapture, the Commissioner concludes, is to mix apples and oranges.

We disagree with the Commissioner's claim that the Laneys waived their possible recapture argument. Their attorney included it as point VI of the trial memo, filed March 13, 1979 with the Tax Court. Although the Tax Court did not address the issue, its failure should not unfairly penalize the Laneys. Befuddled by these contradictory stances and unable to ascertain the truth because of the Tax Court's lack of factual findings on this issue, we are compelled to remand for further findings. On remand, the Tax Court should consult art. 6132b, § 25, to see whether the Laneys effected a valid assignment of their interests. If so, then it must assess their argument that they need not have recaptured $957,633 in their 1973 return. We, of course, express no opinion on this issue. The Tax Court shall determine initially the extent, if any, to which the parties may offer additional evidence.

The decision of the Tax Court is AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

---

10. Nature of a Partner's Right in Specific Partnership Property

Sec. 25. (1) A partner is co-owner with his partners of specific partnership property holding as a tenant in partnership.

(2) The incidents of this tenancy are such that:

\* \* \* \* \* \*

(b) A partner's right in specific partnership property is not assignable except in connection with the assignment of rights of all the partners in the same property.

We point out, however, that assignment of rights of all the partners in the same property apparently is permissible.