[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-10793

_____

WAYNE LEE,

Plaintiff-Appellant,

*versus*

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:21-cv-01579-TPB-AAS

_____

Before LAGOA, BRASHER, and ED CARNES, Circuit Judges.

BRASHER, Circuit Judge:

The IRS penalizes taxpayers for filing late tax returns, unless the delay "is due to reasonable cause and not . . . willful neglect." 26 U.S.C. § 6651(a)(1). In *United States v. Boyle*, the Supreme Court established the bright line rule that "reliance on an agent," without more, does not amount to "reasonable cause" for failure to file a tax return on time. 469 U.S. 241, 248, 252 (1985).

The question in this appeal is whether *Boyle*'s bright line rule applies to e-filed returns. Wayne Lee's CPA failed to file Lee's tax returns for three consecutive years: 2014 through 2016. In 2019, the IRS assessed Lee with over seventy thousand dollars in penalties for violating Section 6651(a) of the Internal Revenue Code and barred him from applying his 2014 overpayment to taxes owed for 2015 and 2016. Lee sued, arguing that his failure to file was due to reasonable cause. He also sought a refund of the penalties. The district court granted summary judgment for the government, concluding that *Boyle* foreclosed Lee's claims. Lee appealed.

If Lee's CPA had failed to file paper tax returns, there would be no question that *Boyle* would have precluded a reasonable cause defense and a refund. *Boyle*, 469 U.S. at 252. But no circuit court has yet applied *Boyle* to e-filed tax returns. *See Haynes v. United States*, 760 F. App'x 324, 327 (5th Cir. 2019) (noting that this is an open question).

We must answer this open question and decide whether *Boyle*'s bright line rule applies to e-filed returns. We believe it does. Accordingly, we conclude that Lee's reliance on his CPA does not

constitute "reasonable cause" under Section 6651(a)(1). We do not address Lee's claim, which he raises for the first time on appeal, that the IRS incorrectly assessed failure-to-pay penalties under Section 6651(a)(2). We affirm the district court.

## I.

We briefly recount the pertinent facts of this case, which are largely undisputed. Wayne Lee, a Florida surgeon, hired CPA Kevin Walsh to prepare and file his federal income tax returns for 2014, 2015, and 2016.[1] Because Walsh's firm, ATROX Partners, prepared and filed more than ten federal tax returns each year, Treasury Regulations deemed Walsh a "specified tax return preparer," requiring him to file all prepared returns on magnetic media (e.g., e-filing).

From 2014 to 2016, Walsh prepared Lee's tax returns. Each return claimed roughly one million dollars in gross income and showed six-figure overpayments, which Lee chose to apply to the following year's estimated tax. Every year, Lee reviewed the returns and signed IRS Form 8879, authorizing Walsh to e-file the returns on his behalf.

But Walsh never filed a single return. According to Lee, Walsh informed the IRS that ATROX's tax preparation software was incapable of preparing Lee's returns due to their complexity.

---

[1] In his amended complaint, Lee alleged that Walsh prepared and failed to file his 2017 tax return as well. Lee does not seek a refund of any penalties related to that return on appeal.

Lee claims that Walsh never told him about this problem—he learned about it after an IRS agent visited his office on December 5, 2018. Lee received no letters from the IRS about the unfiled returns because his mailing address on file with the agency was incorrect. According to Lee, Walsh agreed to update Lee's mailing address with the IRS, but never did so.

Lee submitted the tax returns for 2014 through 2016 in December 2018. The lookback period for calculating Lee's credits therefore began in June 2015. *See* 26 U.S.C. § 6511(b)(2)(A) (describing how a taxpayer may claim a credit only for payments made within the three years and six months preceding the filing of a return). But Lee made no 2014 tax payments after April 2015, so the agency disallowed his 2014 overpayment of $288,409. Unable to benefit from the 2014 overpayment, Lee owed taxes for 2015 and 2016, as well as over seventy thousand dollars in failure-to-file and failure-to-pay penalties. In August 2019, Lee paid the IRS $289,183.14, which settled the outstanding tax liability and penalties.

Later, Lee sued ATROX and Walsh to recover damages caused by Walsh's negligent failure to file the tax returns at issue. That lawsuit settled in early 2020.

Lee also sued for a refund of his taxes and fees in the U.S. District Court for the Middle District of Florida. Lee claimed that reasonable cause excused the late filings due to his reliance on Walsh. The district court granted the government's summary judgment motion, concluding that Walsh's failure to file timely returns

was not "reasonable cause" under Section 6651(a). Though *Boyle* did not mention electronic filing specifically, the district court concluded that *Boyle*'s bright line rule applied to e-filed returns too.

Lee timely appealed.

## II.

We review a district court's grant of summary judgment *de novo*, "viewing all facts and reasonable inferences in the light most favorable to the nonmoving party." *Jurich v. Compass Marine, Inc.*, 764 F.3d 1302, 1304 (11th Cir. 2014); *Haynes v. McCalla Raymer, LLC*, 793 F.3d 1246, 1248 (11th Cir. 2015). Summary judgment is proper if there is no genuine dispute about a material fact and the "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

Lee advances three arguments on appeal. First, he contends that *Boyle* does not apply to e-filed returns. Second, he argues that, regardless of *Boyle*, he demonstrated reasonable cause for the late filings under Section 6651. Third, he asserts that the IRS incorrectly assessed the failure-to-pay penalties because he timely paid the amounts shown on the returns. We take up each argument in turn.

### A.

The crux of this appeal is whether *Boyle*'s bright line rule covers e-filed returns. Taxpayers who fail to file a federal income tax return by the prescribed deadline must pay a penalty. 26 U.S.C. §

6651(a)(1). Failing to pay taxes also results in a penalty. *Id.* § 6651(a)(1)–(3). But Congress excepted from these penalties any failure "due to reasonable cause and not due to willful neglect." *Id.* § 6651(a)(1)–(3). "Reasonable cause" means the "the taxpayer exercised ordinary business care and prudence" but was still unable to file the return on time or to pay the tax. 26 C.F.R. § 301.6651-1(c)(1). "Willful neglect" denotes "a conscious, intentional failure or reckless indifference." *Boyle*, 469 U.S. at 245.

*Boyle* is the seminal case on the scope of reasonable cause. There, taxpayer-Boyle argued that he showed reasonable cause—relying on his attorney—for failing to file a federal estate tax return by the deadline. *Id.* at 245–47. Boyle provided his attorney with all relevant records and checked on the attorney's progress several times throughout the return preparation process. *Id.* at 242–43. Still, the attorney missed the filing deadline. *Id.* at 243.

In resolving the matter, the Supreme Court pronounced a "bright" line rule, holding that the "failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent, and such reliance is not 'reasonable cause' for a late filing under [Section] 6651(a)(1)." *Id.* at 248, 252. The Court emphasized that the Internal Revenue Code imposes "an unambiguous, precisely defined duty" on *taxpayers* to file their returns on time. *Id.* at 250. Thus, relying on an agent to prepare and file a tax return "cannot function as a substitute for compliance with" filing deadlines. *Id.* at 251.

Though *Boyle* involved a failure-to-file dispute, we have noted that its bright line rule applies in the failure-to-pay context as well, and other circuits have agreed. *See In re Sanford*, 979 F.2d 1511, 1514 n.8 (11th Cir. 1992) (noting that *Boyle* allows "a court [to] find reasonable cause" under Section 6651(a)(1) *or* Section 6651(a)(2)); *Staff IT, Inc. v. United States*, 482 F.3d 792, 798 n.17 (5th Cir. 2007) (concluding that there is "no reason to treat the [reasonable cause] language" in Sections 6651(a)(1) and 6651(a)(2) differently); *Valen Mfg. Co. v. United States*, 90 F.3d 1190, 1193 n.1 (6th Cir. 1996) (holding that *Boyle* addresses failure-to-pay disputes because the reasonable cause language in Sections 6651(a)(1) and 6652(a)(2) is "identical and should be given the same construction").

Lee argues that *Boyle* does not govern this action for three reasons: (1) Form 8879 exempts e-filing from the rule in *Boyle*; (2) the e-filing burden fell on Walsh, not Lee; and (3) *Boyle* does not preclude consideration of factors beyond the taxpayer's control when deciding whether reasonable cause exists.

1.

We start with Lee's argument that *Boyle* does not apply because of Form 8879. Lee contends that Form 8879 makes e-filing fundamentally different from paper filing, rendering *Boyle* inapposite in this case. We disagree.

Before a CPA or tax adviser files a taxpayer's return electronically, the taxpayer must complete Form 8879. By signing this form, a taxpayer declares "[u]nder penalties of perjury" that the income tax return is "to the best of [the taxpayer's] knowledge and belief .

. . true, correct, and complete." IRS Form 8879, Part II. The form authorizes the electronic return originator (ERO)—often the tax preparer—to affix the taxpayer's signature on the return and to transmit the return on the taxpayer's behalf. *Id.* IRS publications prescribe detailed procedures for e-filed returns. *See* IRS Pub. 1345, Authorized IRS E-File Providers of Individual Income Tax Returns, 19–27 (Nov. 2022). Taxpayers must sign and date Form 8879 with an approved signature method, and EROs "must originate the electronic submission of a return as soon as possible" after the taxpayer completes Form 8879. *Id.* at 22.

Lee attempts to distinguish his case from *Boyle*, arguing that Walsh had already prepared the returns at issue, which Lee authorized for electronic submission each year by completing Form 8879. The taxpayer in *Boyle* delegated to the agent the tasks of *preparing* the return and of informing him "when the return was due." 469 U.S. at 243. But here, Lee was apprised of all the filing deadlines and ensured that Walsh *prepared* the tax returns by those dates. Lee knew the deadlines, verified that Walsh completed the returns, and delivered a signed Form 8879 to Walsh every year before the filing deadline. After signing and sending Form 8879 to Walsh, Lee claims that there was nothing left for him to do. Thus, he argues that Walsh's failure to file the return with the IRS was "beyond his control." *See Boyle*, 469 U.S. at 248 n.6 (acknowledging that certain circumstances "beyond [the taxpayer's] control," like mail delays and sickness, "exempt late filings from the penalty" under Section 6651(a)(1)).

Several obstacles stand in the way of that argument. First, Form 8879's title specifies that it is an *authorization* form. *See* IRS Form 8879 (titled "IRS *e-file* Signature Authorization"). When Lee completed the form, he authorized ATROX to sign the return with his PIN and "to send [the] return to the IRS." *Id.*, Part II. But authorizing a tax preparer to submit a tax return is not the same as *filing* the tax return—the act of signing Form 8879 does not transmit the return to the IRS. The form therefore does not relieve the taxpayer of "exercis[ing] ordinary business care and prudence" when filing a tax return or paying taxes. 26 C.F.R. § 301.6651-1(c)(1). Lee still had a duty to supervise Walsh's tax preparation and to ensure his tax return had been submitted.

Second, Lee's argument is based on a misreading of footnote six in *Boyle*. In *Boyle*, the Supreme Court excepted circumstances "beyond the taxpayer's control" from IRS penalties, like "postal delays" and "illness." 469 U.S. at 248 n.6. The Court noted that "[t]his principle [of exempting factors beyond the taxpayer's control] might well cover a filing default by a taxpayer" who suffered from a disability that rendered the taxpayer "incapable by objective standards of meeting the criteria of 'ordinary business care and prudence.'" *Id.*

Lee does not fit within footnote 6 of *Boyle*. Lee trusted an agent to file his taxes; he did not experience a disability or illness that affected his ability to "exercise[] ordinary business care and prudence," 26 C.F.R. § 301.6651-1(c)(1). Just like *Boyle*, "this case does not involve the effect of a taxpayer's *disability*," but "the effect

of a taxpayer's *reliance* on an agent employed by the taxpayer." 469 U.S. at 248 n.6. After Lee signed and returned Form 8879, he retained the physical capacity for ordinary business care and prudence. Lee's choice to trust his CPA is not a disability—or circumstance outside Lee's control—that stripped Lee of the ability to ensure that his agent filed his taxes.

Third, Lee's contention that signing Form 8879 left nothing else for him to do, distinguishing his situation from that of the taxpayer in *Boyle*, does not hold water. Lee's reliance on Walsh does not materially differ from Boyle's reliance on his attorney. In *Boyle*, the taxpayer provided his attorney "with all relevant information and records." *Id.* at 242. Though Boyle contacted his attorney several times to inquire about the return's status, the attorney neglected to file the return. *Id.* at 242–43. Here, Lee signed Form 8879 and delivered it to Walsh, counting on Walsh to e-file the return with the IRS. In both cases, the taxpayer similarly relied on the agent. The object of that reliance was different—a paper-filed return for Boyle versus an e-filed return for Lee. But both situations were, so to speak, out of the taxpayers' hands. Boyle's reliance on his attorney did not absolve his "unambiguous, precisely defined duty to file" his returns on time. *Id.* at 250. So too here with Lee's e-filed return.

2.

Lee next argues that e-filing is beyond the ken of the ordinary taxpayer, such that Congress has shifted the e-filing burden to tax preparers. Lee says that Walsh had a legal duty to transmit Lee's

electronic returns to the IRS, so the IRS cannot penalize Lee for his agent's failure to submit an e-filed return. Again, we disagree that these wrinkles distinguish this case from *Boyle*.

A "tax return preparer" is any person who prepares tax returns for compensation. 26 C.F.R. § 301.7701-15(a). The Treasury Department classifies any tax return preparer who "reasonably expects" to file ten or more "individual income tax returns in a calendar year" as a "specified tax return preparer." 26 C.F.R. § 301.6011-7(a)(3). Specified tax return preparers must file returns on "magnetic media," *id.* § 301.6011-7(b), which includes e-filing, *id.* § 301.6011-2(a)(1). Yet, if the taxpayer delivers to the specified tax return preparer a signed and dated document stating that "the taxpayer chooses to file" a paper return "and that the taxpayer, not the preparer," will submit the paper return to the IRS, the specified tax return preparer need not e-file the prepared return. *Id.* § 301.6011-7(a)(4)(ii).

An electronic return originator (ERO) is an authorized e-file provider and "begins the process of electronic submission of a return to the IRS" after receiving authorization (e.g., Form 8879) from the taxpayer. IRS Pub. 3112, IRS E-File Application & Participation, 15 (Oct. 2022). An ERO may also perform tax preparation services, but the IRS considers preparation and origination distinct activities. *Id.* at 2. For most taxpayers e-filing their returns, "[t]he ERO is usually the first point of contact." *Id.* at 15. An ERO can originate an e-filed return in several ways, including by "[e]lectron-

ically sending the return to a Transmitter that will transmit the re-
turn to the IRS" or by "[d]irectly transmitting the return to the
IRS." *Id.* EROs must not "stockpile" returns, which the IRS defines
as "waiting more than three calendar days to submit returns to the
IRS after the [ERO] has all the necessary information for origina-
tion of the electronic return." IRS Pub. 1345, *supra*, at 22, 48.

Based on these IRS publications, Lee suggests that Walsh
had a legal obligation to e-file Lee's returns within three calendar
days of receiving each Form 8879, and he argues that this legal ob-
ligation undermines *Boyle*'s bright line rule. Not so.

First, despite delegating tax preparation and filing to Walsh,
Lee retained full control over the process and was in no way forced
to work with his agent. In theory, "a person experienced in business
matters can [file a tax return] personally." *Boyle*, 469 U.S. at 252.
Nothing prevented Lee, a sophisticated high-income earner, from
preparing and filing the returns himself, which would have avoided
the ERO process altogether. Alternatively, before hiring a CPA, he
could have confirmed that the CPA's firm had the proper software
to handle his returns. And under 26 C.F.R. § 301.6011-7(a)(4)(ii), he
could have taken the returns prepared by Walsh and filed them in
paper format directly with the IRS.

Second, the IRS publication on which Lee relies underscores
that "[a]n electronically filed return is not considered filed *until the
IRS acknowledges acceptance*." IRS Pub. 1345, *supra*, at 7 (emphasis
added). Thus, Lee's signing Form 8879 each year did not complete
the filing process—he needed to obtain acknowledgment from the

IRS. Even if, *arguendo*, the publication transposes the filing obligation to EROs, it cannot trump the Supreme Court's holding that *taxpayers* have "an unambiguous, precisely defined duty to file" timely tax returns. *Boyle*, 469 U.S. at 250.

We have explained that unpublished rulings by the IRS may illustrate an administrative practice, but they "may not be cited or relied on as precedent." *Am. Ass'n of Christian Schs. Voluntary Emps. Beneficiary Ass'n Welfare Plan Tr. v. United States*, 850 F.2d 1510, 1515 n.6 (11th Cir. 1988); *see also* 26 U.S.C. § 6110(k)(3) (noting that "[u]nless the Secretary otherwise establishes by regulations, a written determination [by the IRS] may not be used or cited as precedent"). If unpublished IRS rulings carry no precedential force, we are confident that an IRS *publication* cannot supplant conflicting Supreme Court precedent. Instead, we agree with the Second Circuit that "IRS publications do not displace controlling statutes, regulations, and case law." *Gerstenbluth v. Credit Suisse Secs. (USA) LLC*, 728 F.3d 139, 147 (2d Cir. 2013). Accordingly, IRS publications that advise EROs to originate completed electronic returns within three days cannot abrogate *Boyle*'s bright line rule.

No doubt, if the facts are as Lee alleges, then Walsh breached his contractual and ethical obligations to Lee. Walsh may be liable to reimburse Lee for the damage his negligence has caused. But Walsh did not assume Lee's legal duties to file timely tax returns and to pay taxes. Walsh's potential liability to Lee (which they have already litigated and settled) does not extinguish Lee's liability to the IRS.

14                    Opinion of the Court                    22-10793

3.

In a final salvo, Lee reprises his first argument, positing that he has demonstrated circumstances beyond his control—the complexity of both his own tax situation and e-filing generally. He again claims that he exercised ordinary business care and prudence and believes that he should not be penalized solely because he hired a third-party tax preparer.

We need not rehash our discussion above. Simply stated, we agree with Lee that *Boyle* permits certain circumstances "beyond the taxpayer's control" to constitute reasonable cause, which would exempt the taxpayer from IRS penalties. 469 U.S. at 248 n.6. But the circumstances about which Lee complains were not beyond his control. Complex tax situations and tortuous e-filing procedures are not disabilities that divest a taxpayer of the faculties needed for ordinary business care or prudence.

Congress authorized the Secretary to promote e-filing presumably because it is more accessible, accurate, and administrable than paper filing. *See* 26 U.S.C. § 6011(f)(1); *Here Are Some Reasons Taxpayers Should E-File Their Taxes (IRS Tax Tip 2020-25)*, IRS (Feb. 26, 2020), https://www.irs.gov/newsroom/here-are-some-reasons-taxpayers-should-e-file-their-taxes (observing that e-filing is secure, often free, easy, and leads to faster refunds) [https://perma.cc/3W4X-2XES]. In 2021, ninety percent of all individual tax returns were filed electronically. *Returns Filed, Taxes Collected & Refunds Issued*, IRS, https://www.irs.gov/statistics/returns-filed-taxes-collected-and-refunds-issued

[https://perma.cc/C4ZX-VG7S] (Apr. 14, 2023). If the alleged complexity of e-filing is so beyond the taxpayer's control that it renders the taxpayer incapable of ordinary business care and prudence, the overwhelming majority of taxpayers would have reasonable cause for late filing. That conclusion would raze the tax filing regime and undermine *Boyle*'s bright line rule.

Because *Boyle* applies here, Lee cannot establish reasonable cause for his failure to file or his failure to pay. We agree with Lee that *Boyle* did not address e-filing directly. But e-filing "do[es] not alter or affect a taxpayer's obligation to file returns under any other provision of law." 26 C.F.R. § 301.6011-7(a)(4)(iii). The Supreme Court's authoritative construction of Section 6651(a)(1) is *Boyle*, which applies to e-filed returns just as much as it applies to paper-filed returns.

## B.

Because we agree with the district court about *Boyle*'s application to e-filed returns, we need not address Lee's argument that he acted reasonably and is entitled to relief under Section 6651(a)'s reasonable cause exception. But even if we ignore *Boyle*, we cannot say Lee has demonstrated reasonable cause for his late filings or late payments.

Taxpayers must file tax returns *and* pay taxes by the prescribed due date. 26 U.S.C. § 6651(a). The IRS can assess failure-to-file and failure-to-pay penalties, unless the taxpayer's failure "is due to reasonable cause and not due to willful neglect." *Id.* § 6651(a)(1)–(2). Lee argues that he falls within the reasonable cause exception

because he exercised ordinary business care and prudence by retaining a CPA, reviewing his tax returns, signing Form 8879 each year, and overpaying his taxes in 2014. We are not persuaded.

1.

Reasonable cause for failure to file a tax return on time requires that the taxpayer "exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time." 26 C.F.R. § 301.6651-1(c)(1). This is a stringent standard. For instance, even before the Supreme Court decided *Boyle*, our predecessor court had held that a taxpayer does not show reasonable cause for a late filing by relying on an accountant. *Laney v. Comm'r*, 674 F.2d 342, 350 (11th Cir. 1982) ("Were the taxpayer's duty to file on time fulfilled merely because he employed an accountant or lawyer . . . our voluntary system would forthwith screech to a halt."); *see also Millette & Assocs., Inc. v. Comm'r*, 594 F.2d 121, 124 (5th Cir. 1979) ("[R]eliance on tax advisors is not reasonable cause for failure to file a return on time . . . ."). And because "it is the taxpayers' gross income, not their tax liability, that triggers the filing requirement," overpayment of taxes cannot absolve a failure to file. *Calloway v. Comm'r*, 691 F.3d 1315, 1335–36 (11th Cir. 2012).

Though we have never addressed whether e-filing alters the reasonable cause analysis, we are not convinced that it does. The statutory obligation to timely file a tax return does not depend on the filing medium, and we agree with the few lower courts to have considered the issue. *See, e.g.*, *Intress v. United States*, 404 F. Supp.

3d 1174, 1182 (M.D. Tenn. 2019) (concluding that "reliance on an agent" is not "reasonable cause in the e-file context"); *All Stacked Up Masonry, Inc. v. United States*, 150 Fed. Cl. 540, 549 (2020) (relying on tax preparation software not reasonable cause for late filing).

To be sure, Lee showed some diligence by reviewing his tax returns, signing Form 8879, authorizing Walsh to e-file the returns each year, and overpaying his 2014 taxes. But Lee's 2014 overpayment cannot cure his failure to *file. Calloway*, 691 F.3d at 1336. More importantly, however, Lee never confirmed—either with Walsh or the IRS—that the returns were filed. The duty to file tax returns on time lies with the *taxpayer*, not the agent, and it remains invariable whether e-filing or paper filing. Unfortunately, Lee blindly relied on his agent to his detriment. We cannot say that such reliance, without more, amounts to reasonable cause under Section 6651(a)(1).

2.

Similarly, the IRS cannot impose a failure-to-pay penalty when the taxpayer shows reasonable cause. 26 U.S.C. § 6651(a)(2). In the failure-to-pay context, "reasonable cause" means that the taxpayer "exercised ordinary business care and prudence in providing for payment of [the] tax liability *and* was nevertheless either unable to pay the tax or would suffer an undue hardship" by paying the tax on the due date. 26 C.F.R. § 301.6651-1(c) (emphasis added). "Undue hardship" is "more than an inconvenience to the taxpayer." *Id.* § 1.16161-1(b). Rather, the taxpayer must demonstrate

that "substantial financial loss . . . will result" from making the payment on time. *Id.* Before imposing a failure-to-file penalty, the IRS should consider "all the facts and circumstances of the taxpayer's financial situation." *Id.* § 301.6651-1(c).

Lee did not file his 2014 tax return until December 2018. But he could not claim credits for overpayments made after June 2015. *See* 26 U.S.C. § 6511(b)(2)(A). For credit determination purposes, Lee made the 2014 overpayment on April 15, 2015, before the June 2015 lookback period commenced. *See id.* § 6513(a) (stating that the IRS counts tax payments as received on "the last day prescribed for the payment of the tax"). Thus, he could not benefit from the 2014 overpayment of $288,409, which would have otherwise carried over to the 2015 and 2016 tax years. Without that credit, Lee owed tax liability for both years, and the IRS assessed failure-to-pay penalties.

Just like for his failure to file, Lee has not shown reasonable cause for his failure to pay. He asks, "What more could [he] have been reasonably expected to do?" Appellant Br. at 16. First, he could have exercised ordinary business care and prudence by confirming that the IRS received his 2014 tax return and overpayment. All his calculations for estimated tax liability going forward were based on the filing of that return, but Lee did nothing to ensure it had been filed. Second, even if we believe that Lee demonstrated ordinary business care, he must also convince us that he "was . . . either unable to pay the tax or would [have] suffer[ed] undue hardship" by making timely tax payments. 26 C.F.R. § 301.6651-1(c).

But Lee has never contended that financial hardship prevented him from paying his taxes by the deadline. Instead, he premises his entire argument on the assumption that he did not have to pay because of previous overpayments. That assumption was not only incorrect but also does not grapple with the conjunctive elements required for reasonable cause under 26 C.F.R. § 301.6651-1(c).

Accordingly, even if we disregard *Boyle*, Lee does not have reasonable cause for his failure to file or his failure to pay.

### C.

Lee briefly argues, for the first time on appeal, that Section 6651(a)(2) penalties do not apply if the IRS disallows a credit after a return is filed. We do not confront that argument—Lee waived the issue by not raising it in the district court, and "it is not properly before us." *See Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003); *Ramirez v. Sec'y, U.S. Dep't of Transp.*, 686 F.3d 1239, 1249 (11th Cir. 2012).

When the district court converted the government's motion to dismiss into a motion for summary judgment, Lee objected, arguing that (1) *Boyle* does not apply to e-filed returns and (2) reasonable cause excused his failure to file and failure to pay. Lee never suggested that the IRS incorrectly calculated the assessed penalties. He raises this argument for the first time on appeal, and we refuse to consider it.

### IV.

The district court is **AFFIRMED.**

22-10798          LAGOA, J., Specially Concurring          1

LAGOA, Circuit Judge, specially concurring:

I concur with the majority opinion that we are bound by the bright line rule articulated in *United States v. Boyle*, 469 U.S. 241 (1985).  And I also concur that this bright line rule applies to electronically filed (or e-filed) tax returns and that the duty to file taxes on time is nondelegable.  But in light of *Boyle*'s application to the circumstances of this case, I write separately to highlight the risks facing taxpayers who rely on their accountants to e-file their returns.

I begin with the facts of this case.  From 2014 to 2016, Wayne Lee hired a certified public account ("CPA"), Kevin Walsh, to prepare and file his taxes with the Internal Revenue Service ("IRS").  Each year, Lee reviewed his returns prepared by Walsh and signed IRS Form 8879, authorizing Walsh to file his returns electronically.  He also sent regular payments to the IRS, attempting to avoid an underpayment penalty.  In fact, in 2014, 2015, and 2016, his total payments were $635,490, $484,572, $539,956, respectively, all of which were overpayments of the amounts owed.  Because Lee's accountant failed to file his tax returns, however, the IRS did not apply his 2014 overpayment toward subsequent years, resulting in tax liabilities for 2015 and 2016 and both failure-to-file and failure-to-pay penalties.

In many ways, Lee acted prudently.  He hired an accountant to prepare his tax returns, sent large amounts of money to the IRS each year to avoid underpayment penalties, and reviewed all of his returns before telling his accountant to file them electronically.

2                    LAGOA, J., Specially Concurring           22-10793

The fact that Lee nonetheless owes additional monies to the IRS is reflective of the current e-filing system and the precarious situation in which it places taxpayers who rely on accountants.

Every year, millions of Americans turn to tax professionals to ensure that their taxes are properly prepared and filed. *See Internal Revenue Service Databook, 2022*, at 2 (2022), http://irs.gov/pub/irs-pdf/p55b.pdf (noting that, for fiscal year 2022, nearly 85.9 million individual tax returns were filed by paid preparers). Although hiring a "tax return preparer"—i.e., "any person who prepares for compensation, or who employs one or more persons to prepare for compensation, all or a substantial portion of any return of tax," 26 C.F.R. § 301.7701-15(a)—is not required to pay taxes properly, such decisions make sense for many taxpayers seeking to comply with the law given the complexity and length of the Internal Revenue Code. And if a taxpayer's tax return preparer reasonably expects to file more than ten individual tax returns in a calendar year, then that return preparer is a "specified tax return preparer." *Id.* §§ 301.6111-7(a)(3), 301.6111-2(c)(1). A specified tax return preparer *must* file returns on "magnetic media," which includes electronic filing. *Id.* §§ 301.6011-7(b), 301.6111-2(a)(1). If the taxpayer wishes, he can proactively choose to file a paper return on his own, and the specified tax return preparer need not e-file the prepared return. *See id.* § 301.6011-7(a)(4)(ii). Pursuant to the IRS's regulations, however, the default filing mechanism for taxpayers who use specified tax return preparers is electronic, and the IRS strongly promotes the benefits of the e-filing system. *See* 26 U.S.C. § 6011(f) (authorizing the Secretary "to promote the benefits of and

22-10798          LAGOA, J., Specially Concurring          3

encourage the use of electronic tax administration programs, as they become available," and to "implement procedures to provide for the payment of appropriate incentives for electronically filed returns"); *see, e.g.*, IRS Pub. 3112, at 2 (rev. Oct. 2022); *see also Internal Revenue Service Databook, 2022*, at 2 (noting that, for fiscal year 2022, 93.8 percent of individual tax returns were filed electronically).

As such, if the taxpayer does not request to file a paper return on his own, his accountant will request that the taxpayer fill out Form 8879 so that the accountant can complete the e-filing process. *See* IRS Pub. 1345, at 18 (rev. Nov. 2022). Form 8879 is a signature authorization for an e-filed return and lists the responsibilities of the taxpayer, which includes verifying the accuracy of the prepared income tax return. Form 8879, at 2 (rev. Jan. 2021). A tax preparer who has been authorized to e-file on behalf of a client is known as an Electronic Return Originator ("ERO"). IRS Pub. 3112, at 15. After receiving authorization from the client, an ERO "begins the electronic submission of a return." *Id.* The ERO has the responsibility to begin the electronic submission in a timely manner and "must originate the electronic submission of a return as soon as possible." IRS Pub. 1345, at 22 (rev. Nov. 2022).

After signing the Form 8879, a taxpayer reasonably would expect that the simple act of filing the tax return would be completed quickly and without issue. But this is where the filing of Lee's taxes went awry. His accountant, despite preparing Lee's tax returns and requesting authorization for e-filing, never submitted

the returns to the IRS and never notified Lee of this failure.  Because his accountant also failed to notify the IRS of Lee's address change, Lee never received messages from the IRS informing him of his failure to file.  Despite all this, under *Boyle*, Lee is still on the hook to the IRS for the penalties relating to his failure to file and failure to pay.

Taxpayers therefore must understand (and likely may not) that, under current law, even if they sign the Form 8879 and have an accountant's assurances of filing, they can still be liable for an accountant's failure to file.  In other words, under *Boyle*'s bright line rule, the responsibility lies with the individual taxpayer to confirm the submission of their tax return to the IRS.  And under *Boyle*'s bright line rule, it is not clear whether Lee would be excused from penalties even if his accountant affirmatively misrepresented to him that his returns were filed on time.  When it comes to return filing deadlines, the taxpayer is essentially alone.

What then can a taxpayer do to avoid the risk that a negligent, or possibly fraudulent, agent might saddle him with failure-to-file penalties and ensuing failure-to-pay penalties?  First, taxpayers can confirm independently with the IRS on the phone or its website that the IRS received their return.  Second, taxpayers can affirmatively choose to file the return independently on paper, which requires the taxpayer to give a "hand-signed and dated statement" to the tax return preparer who prepared the return, stating that "the taxpayer chooses to file the individual income tax report in paper format, and that the taxpayer, and not the preparer, will

22-10798          LAGOA, J., Specially Concurring          5

submit the paper individual income tax return to the IRS." *See* 26 C.F.R. § 301.6011-7(a)(4)(ii). This ensures that a taxpayer concerned about whether his tax return preparer will timely file his tax return will have control over the return's submission to the IRS. But it defeats the efficiency and convenience that the e-filing system was designed to promote.

And it is compounded by the fact that any taxpayer using an accountant who files more than ten individual tax returns in a tax year—i.e., the vast majority of accountants—is defaulted into the e-filing system leaving the taxpayer on the hook for any failure to do so. As the majority notes, the legal obligation on taxpayers here is a heavy burden that can lead to unintended financial consequences for a taxpayer if not complied with, even if the taxpayer assumes that their tax professional will timely file their tax returns. Taxpayers need to fully understand both the hidden dangers and available protections when relying on an agent to file their tax returns, and accountants and other professional tax preparers should advise their clients of taxpayers' responsibilities to ensure the submission of their returns regardless of their reliance on an agent.